ALUMINUM COMPANY OF AMERICA, a Pennsylvania corporation, Plaintiff,

v.

ADMIRAL MERCHANTS MOTOR FREIGHT, INC., a Minnesota corporation, et al., Defendants.

Nos. 70 C 1189, 70 C 1190 and 70 C 1197.

United States District Court, N. D. Illinois, E. D.

Nov. 10, 1971.

Memorandum Opinion Jan. 28, 1972.

Pope, Ballard, Kennedy, Shepard & Fowle, Chicago, Ill., for plaintiff.

Donald Levine, Axelrod, Goodman, Steiner & Bazelon, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

The issues presented by the plaintiff's motion for summary judgment in each of these three pending cases is whether certain orders of the Interstate Commerce Commission are valid and whether the plaintiff may sue for refund of certain alleged overcharges collected by the three defendants, each a motor carrier.

Plaintiff claims a refund of freight charges based upon the refund order of the Interstate Commerce Commission entered in Increased Rates and Charges,

From, To and Between Middlewest Territory, Docket No. 34971, 335 I.C.C. 142. Plaintiff is a shipper over the lines of the defendant carriers and the defendants are common carriers by motor vehicle subject to Part II of the Interstate Commerce Act.

The I.C.C. refund order here involved runs against the defendants in these cases and against all other carriers who were parties to certain increased rate tariffs filed by the Middlewest Motor Freight Bureau, Inc., effective April 1, 1968. The Commission had let the increased rates go into effect on their effective date but, on protest of various parties (not including the plaintiff herein), had instituted an investigation, without suspension, into the lawfulness of the increased rates and had set the matter for hearing on May 20, 1968. When requests were then made by certain public shippers and the carriers (but not by the private shippers) for an extension of time to prepare for the hearing, the Commission granted a three months extension of time to August 19, 1968, but included in its extension order a refund provision requiring refund of the increased portion of the rates collected on shipments after May 20, 1968, if the increased rates should ultimately not be approved by the Commission.[1]

Thirteen months after granting the extension and after oral hearings and briefing by the carriers and others, the Commission found the increased rate tariffs not shown to be just and reasonable. Based upon this finding, the Commission, on June 5, 1969, ordered the increased rate tariffs cancelled and, in accord with the prior refund proviso, ordered the carriers to make appropriate refunds to shippers.[2]

Subsequent to the June 5th order by the Commission, the respondent carriers petitioned to vacate the order. On August 29, 1969, at a general session of the Commission, the carriers' petition to reconsider and vacate said refund order was denied, and the Commission again ordered the refunds to be made.[3]

The increased rates that were not shown to be just and reasonable were collected by the defendants from April 1, 1968 to August 31, 1969, with the Order to Refund applicable only to charges made from May 20, 1968 to August 31, 1969. Although the defendants in each case deny any liability whatsoever, they do specify the amount of refund of freight charges to which the plaintiff would be entitled in each case if the latter is entitled to any refund under the orders of the Commission.[4] The issues

1. This order read, in pertinent part, as follows:
   *It is further ordered,* That the time for filing the requested information and supporting data be, and, it is hereby extended to August 5, 1968; that the hearing be, and, it is hereby postponed to August 19, 1968, conditioned upon respondents compliance with the refund provision ordered below * * *
   *And it is further ordered,* That respondents be and, they are hereby, ordered to make refunds to the shippers on any shipment moving after May 20, 1968, to the extent that the increases or any portion thereof under investigation herein are not approved by the Commission. I.C.C. Order of April 25, 1968, Docket No. 34971.

2. This order read in pertinent part, as follows:
   *It is further ordered,* That, in accordance with the order entered herein

on April 25, 1968, the respondents be, and they are hereby, required to refund to shippers the charges on shipments moving after May 20, 1968, to the extent that such charges included the increases found not shown to be just and reasonable. I.C.C. Order of June 5, 1969, Docket No. 34971.

3. This order, the final order involved in the instant litigation, read as follows:
   * * * that the respondents will hereinafter, in accordance with the said decision of June 5, 1969, make refund to shippers presenting their claims to the carriers supported by paid freight bills or other appropriate evidence. I.C.C. Order of August 29, 1969, Docket No. 34971.

4. For a more thorough factual discussion of the actions taken before and by the Commission in regard to the matters involved in this litigation, see Admiral-

before us, then, are exclusively legal questions.

## I

■ The initial issue which we must resolve is the propriety and validity of the I.C.C. refund order that affects the defendants. The defendants argue at great length that the order was void for numerous reasons. This issue, however, has been resolved against them by the Courts that have previously reviewed their contentions. In Admiral-Merchants Motor Freight, Inc., et al. v. United States, 321 F.Supp. 353 (D.Colo.1971), aff'd 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed. 2d 37 (1971), the motor carriers involved before the Commission sought to have the refund orders of the Commission overturned. A three-judge district court was convened in Denver to hear this suit and denied the carriers' request. The Supreme Court affirmed in a per curiam decision without opinion.

The only basis that has been suggested by the defendants in opposition to the motion for summary judgment that would distinguish Admiral-Merchants from the instant case is that Admiral-Merchants, unlike the proceedings herein, was not an enforcement proceeding but merely an attack upon the refund order entered by the Commission. The

district court stated in this respect, "The practical effect of this ruling is not before us since this is not an enforcement proceeding." 321 F.Supp. at 360. We believe that this distinction, however, is not relevant to the initial issue of the propriety of the Commission order.

The defendants contend that the Colorado district court did not affirm the order of the Commission, but merely refused the plaintiffs in that suit (the carriers) the relief that they requested. This myopic reading of the opinion of the district court is belied by the statement of issues set forth by that court and by the question presented on appeal to the United States Supreme Court.[5] A reading of these "presented" issues clearly indicates that both the District Court and the Supreme Court were affirming the validity of the Commission refund order.

Yet another reason makes apparent that the District Court and the Supreme Court were adjudicating and affirming the validity of the Commission's refund order. Under the procedures established for review of Interstate Commerce Commission order, those orders are self-enforcing,[6] but the carriers or other interested parties are given the right to apply to a three-judge court to enjoin them.[7] It follows, then, that under these

---

Merchants Motor Freight, Inc., et al. v. United States, 321 F.Supp. 353 (D.Colo. 1971), aff'd 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37 (1971).

5. The district court framed the issue presented as follows:

We must decide whether an order of the Commission in which a rate increase is denied, which order directs repayment of interim rates, if determined to be invalid, and which refund order was entered by the Commission as a condition of granting an extension of time to the carriers at their request, is invalid and subject to a judgment annulling the same. * * * We are limited to the propriety and validity of a conditional rate refund order, which order was tacitly or impliedly (by withdrawal of objection) accepted by the carriers * * *. 321 F.Supp. at 358.

The question presented to the Supreme Court on appeal from the district court decision was framed as follows:

Did Interstate Commerce Commission, after investigating motor carriers' increased rates, exceed its statutory authority in directing refund of increases from revenues collected during investigation upon determining, allegedly without findings or rationale, that rates "had not been shown to be just and reasonable"? 40 U.S.L.W. 3026.

6. See, Sections 15(2), 16(7), 221(b) and 222(a) of the Interstate Commerce Commission Act, 49 U.S.C. §§ 15(2), 16(7), 321(b) and 322(a).

7. After the first nineteen years of the Commission's existence in which its orders were not reviewable through direct proceedings, the Hepburn Act of 1906, 34 Stat. 584 (1906), 49 U.S.C. § 1 et seq., expressly conferred jurisdiction on

procedures an affirmance of a Commission order results from a three-judge district court's refusal to enjoin. Because the three-judge court refused in *Admiral-Merchants* to enjoin or set aside the refund order of the Interstate Commerce Commission, with the Supreme Court affirming that decision, we conclude, apart from the statements of issues given by and to those Courts, that those Courts in fact affirmed the validity of the Commission refund order. Therefore, the defendants are precluded from attacking this order under the established doctrine of *res judicata* and this Court is likewise bound to accept the validity of the refund order.

## II

Having made the determination that the Commission's refund order was valid, the next issue presented to the Court concerns the practical effect of the order upon plaintiff's rights.[8] In dealing with the practical effects of the order, three separate questions arise. The initial question is whether the plaintiff's failure to intervene or otherwise become involved with the proceedings before the Interstate Commerce Commission is an impediment to its instant suit. Second, we must determine if the plaintiff has a statutory basis for suit. Finally, we must consider plaintiff's asserted equitable basis for recovery of restitution.

■ A. Although they never specifically make the allegation, the defendants

appear to argue at various points in their brief in opposition to the motion for summary judgment that the plaintiff should be precluded from collecting any refunds under the order of the Interstate Commerce Commission because it was not a party to the proceedings before the Commission which culminated in that order nor in the subsequent review proceedings in which the refund order was affirmed. If the defendants are making this argument, we do not believe it to be meritorious because the litigation before the I.C.C. was intended to benefit all shippers over the lines of the carriers subject to the order.

In Phillips v. Grand Trunk Western Railway, 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774 (1914), the plaintiff therein was accorded the benefits of a reparations order entered in an I.C.C. proceedings to which it was not a party. As the basis for its rationale, the Supreme Court stated:

> * * * the proceeding before the Commission, to determine the reasonableness of the [contested rate increase], was not in the nature of private litigation between [the protestants] and the carriers, but was a matter of public concern in which the whole body of shippers was interested. The inquiry as to the reasonableness of the advance was general in its nature. The finding thereon was general in its operation, and inured to the benefit of every person that had been

the federal district courts to enjoin, set aside, or annul orders of the Interstate Commerce Commission. The procedure prescribed was that adopted in 1903 by the Expediting Act, 32 Stat. 823 (1903), 49 U.S.C. § 44, i. e., a three-judge court with direct appeal only to the Supreme Court. These same mechanics of appeal are made applicable to motor carriers subject to Part II of the Interstate Commerce Act by Sections 205(g) and (h) of the Motor Carrier Act, 49 U.S.C. §§ 305(g) and (h). The statutory provisions for review of orders of the Commission are now codified as 28 U.S.C. §§ 1253, 1336, 2284, 2321–2325 and 49 U.S.C. §§ 17(9), 305(g) and 305(h). See, generally, Anderson

and Feeney, Manual of Practice and Procedure Before the Interstate Commerce Commission 54 (1967), and I. C. C. v. Atlantic Coast Line (1966) 383 U.S. 576, at 603–604, 86 S.Ct. 1000, 16 L.Ed.2d 109.

8. As noted above, the decision of the three-judge district court in *Admiral-Merchants, supra* n. 4, did not pass upon the practical effects of its upholding of the I.C.C. refund order involved herein. 321 F.Supp. at 360. We agree, therefore, with the urgings of the defendants that *Admiral-Merchants* is not relevant to the rights of the plaintiff in seeking enforcement of that order, with the exception, of course, of that case's core finding of validity of the order.

obliged to pay the unjust rate. Otherwise those who filed the complaint, or intervened during the hearing, would have secured an advantage over the general body of the public, with the result that the order of the Commission would have created a preference in favor of the parties to the record, and would have destroyed the very uniformity which that body had been organizd to secure. The plaintiff and every other shipper similarly situated was entitled by appropriate proceedings before the Commission or the courts to obtain the benefit of that general finding and order.[9]

We believe that *Phillips* is precisely in point with the facts of the instant litigation and that plaintiff, therefore, is not precluded from recovering its claims merely because it was not involved in the procedings before the Commission.

Furthermore, the plaintiff should be entitled to rely upon the refund order regardless of the principles of the *Phillips* case, for the reason that plaintiff is a member of the class that the refund order was designed to protect. It was the money of all shippers over the lines of the carriers that were party to the rate increases which was put at risk when the Commission agreed to the request for a long continuance of the hearing on the validity of the rate increase.

The following facts can be developed from the record in the I.C.C. proceedings and the facts as found by the three-judge district court in *Admiral-Merchants*. After various protests were filed with the Commission concerning the increased tariffs, the I.C.C. ordered an investigation into and concerning the lawfulness of the increased rates, but did not, however, order suspension of the new schedules. The Commission originally planned to handle the case under special expedited procedures and prescribed that an examiner's recommended report and order should be dispensed with because the circumstances required an expedited decision. After the date was set for the hearing, however, the carriers (amongst others) requested by letter that the date for the hearing be postponed so that they could prepare their evidence. The Commission granted the request, but put the controverted refund proviso into its order.[10] Five days later, the carriers petitioned the Commission for reconsideration of the order, challenging the validity of the refund provision on various grounds. Subsequently, however, they withdrew this objection, leaving standing the original order of April 25, 1968.

It is obvious to this Court that the refund provision was part of a *quid pro quo*. The Commission granted the continuance requested by the carriers, which gave them at least a temporary right to charge the increased rates, but at the same time, the Commission also attempted to protect all shippers affected by the proposed increase from injury should the rates not be ultimately approved by including the refund provision within the order that granted the continuance. It follows that the plaintiff is, in effect, a third party beneficiary of the refund provisions that the Commission exacted as a condition for the continuance of the hearing without suspension of the increased rates.

As the plaintiff paid the increased shipping charges to the defendant carriers subsequent to the date of the granting of the continuance and prior to final Commission resolution of the issues, it was providing the carriers with moneys that were earmarked for return should the latter fail to convince the Commission that the increased rates were just and reasonable. Because the carriers failed to meet their burden of convincing the Commission of the reasonableness of their rate increases, only a distorted view of justice could lead to any conclusion other than that the plaintiff is entitled to the return of these earmarked moneys in accord with the Commission refund orders irrespective of its lack of participation in the I.C.C. proceedings or court review thereof.

9. 236 U.S. at 665, 35 S.Ct. at 445.

10. Order of April 25, 1968, *supra* n. 1.

B. The next question to be resolved is whether the plaintiff has a statutory basis for recovery of the moneys it paid to the defendants attributable to the unapproved rate increases which were ordered refunded. The plaintiff contends that it is entitled to a judgment for the amount of the refund due under the Commission's order based upon Sections 16(2) and 205(g) of the Interstate Commerce Commission Act, 49 U.S.C. §§ 16(2) and 305(g). The defendants, not surprisingly, contend that the plaintiff is not so entitled.

Section 205(g) of Part II of the Interstate Commerce Commission Act, 49 U.S.C. § 305(g), provides that any final order made under Part II, which deals with motor carriers, "shall be subject to the same right of relief in court by any party in interest as is now provided in respect to orders of the Commission made under Chapter I (which deals with railroads)." Because no doubt exists that we are dealing with a final order made under Part II of the Interstate Commerce Act [11] and because we have concluded above that the plaintiff is a party in interest to such order, we must, therefore, look to Part I of the Act to determine the scope of the plaintiff's rights.

Section 16(2) of Part I of the Act, 49 U.S.C. § 16(2), provides in part as follows:

If a carrier does not comply with [a Commission] order for the payment of money * * *, any person for whose benefit such order was made, may file in the district court of the United States * * *, a complaint setting forth briefly the causes for which he claims damages, and the order of the commission in the premises. Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages * * *.

While no doubt exists that this section was designed originally to cover orders by the Commission in reparations situations,[12] no reason appears why the valid order of the I.C.C. involved herein for the payment of money, which order clearly is covered under the language of the statute quoted above, should not also be deemed within the purview of this section.

The defendants' sole ground for denying that Section 16(2) of the Act provides plaintiff with a statutory remedy is that T. I. M. E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959) prevents this Court from granting the relief that the plaintiff now seeks. In that case, the Supreme Court concluded that the Interstate Commerce Commission had no power to award reparations under Part II of the Interstate Commerce Act as it then existed.[13] The defendants argue that the analysis of the *T.I.M.E.* decision prohibits the type of order which the Commission has promulgated in these proceedings because such order in effect grants a right of repara-

---

11. There are three different orders of the I.C.C. in Docket No. 34971 containing provisions relating to the refund here involved, as set forth in notes 1, 2 and 3, *supra*. It is the Commission's order of August 29, 1969, *supra* n. 3, in which the Commission denied the carrier's petition to vacate that portion of the prior order requiring refund payments to shippers and which again affirmatively ordered such payments to be made, that is the final Commission order involved in this suit.

12. Reparations may be ordered by the I.C.C. to shippers if a proposed new tariff has gone into effect and the Commission subsequently determines that

such increase is "not justified" (in the case of railroads) or "unjust and unreasonable" (in the case of motor carriers). *See*, 49 U.S.C. §§ 15(7) and 304a(2) and (4). In a reparation proceedings relating to motor carriers, the Commission is empowered to make affirmative findings as to past unreasonableness of rates. No such findings were made by the Commission in Docket No. 34971 because the proceedings therein (as in the case in the instant suit) did not deal with a claim for reparations.

13. Subsequent to this case, Congress amended the Act to provide a limited right to shippers to collect reparations from motor carriers. Pub.L. 89–170

tions other than the statutory right granted by Congress subsequent to *T.I.M.E.* This argument, however, is simply another attack on the validity and propriety of the Commission's refund order, which has been litigated and sustained all the way to the Supreme Court.

In no sense did the *T.I.M.E.* decision consider the issue of whether, when the Commision does issue a valid refund order under Part II, the shippers for whose benefit the order was issued can proceed under Section 16(2) of Part I. For the reasons outlined above and because the defendant asserts nothing which would support a contrary conclusion other than the one argument already discussed, we conclude that the plaintiff is entitled, under Sections 16(2) and 205(g) of the Interstate Commerce Act, 49 U.S.C. §§ 16(2) and 305(g), to a judgment for the amount of the refund due under the Commission's order.

■ C. The plaintiff contends that, apart from its statuory right to judgment against the defendants, it is also entitled to a judgment under the Court's power to award restitution. The arguments in support of and against this theory of recovery involve the subtle implications of the *T.I.M.E.* decision as they affect Section 216(j) of the Act, 49 U.S.C. § 316(j).[14] We need not, however, reach this pool of troubled waters because of a more basic impediment to plaintiff's recovery under this theory. If plaintiff has some common law or equitable basis for recovery, the cause of action would arise outside of the Interstate Commerce Act and would, apparently, be a standard diversity action. This basis for jurisdiction has not been alleged and probably could not be alleged because the minimum amount in controversy required by 28 U.S.C. § 1332 for federal jurisdiction in diversity actions does not appear to be involved and, fur-

ther, because the plaintiff appears to be a resident of the same state for jurisdictional purposes as that of at least one of the defendants. At the least, this jurisdictional problem would preclude us from presently granting the plaintiff's motion for summary judgment based upon a theory of restitution.

## III

■ The only remaining issue to be resolved concerns the amount of the judgment to which the plaintiff is entitled in each of these three cases. The defendant appears to contend that a factual issue remains which precludes the granting of summary judgment concerning the amount of plaintiff's damages. We do not, however, believe this issue to be present in these cases.

In each of the three pendings cases, the respective defendant has stipulated that if the plaintiff is entitled to refund under the orders of the Commission in Docket No. 34971, then it is entitled to a specified dollar amount under the order. These dollar amounts, we believe, are the precise measure of the plaintiff's damages attributable to the defendants' failure to abide by the Commission's valid order to which they agreed. The disputed issues of fact to which the defendants aver, such as the presence or lack thereof of unjust enrichment to the defendants and the extent of unlawfulness of the rates in the dispproved tariff, are not relevant to the issue of plaintiff's damages under the Commission's order. Accordingly, because no material issue of fact remains, we grant the plaintiff's motion for summary judgment in these three cases for the amount specified in its stipulation with each of the defendants.

The only element of this suit over which we cannot now grant judgment is the plaintiff's requeset for reasonable

(1965) amended § 304a of Title 49 to allow such suits for reparations. *See generally*, 1965 U.S.Code Cong. and Admin.News p. 2923.

14. 49 U.S.C. § 316(j) provides:
Nothing in this section shall be held to extinguish any remedy or right of action not inconsistent herewith.

attorneys' fees.[15]   Because no evidence or suggestion has been tendered as to what dollar amount would constitute reasonable attorneys' fees in these proceedings, counsel for the plaintiff will have an opportunity to present evidence on this subject within five days hereof.   If no such evidence is presented, no further action with respect to an allowance of attorneys' fees will be taken.   If such evidence is presented, defendants will have five days in which to file any objections to the amounts requested by plaintiffs.

Counsel for the plaintiff shall prepare and submit within short date an order consistent with the foregoing for each of the three pending suits.

## MEMORANDUM OPINION ON MOTION TO VACATE JUDGMENT .

The plaintiff in these actions has sued the defendants for refund of certain freight charges pursuant to relevant orders of the Interstate Commerce Commission.   We have previously ruled in response to the plaintiff's motions for summary judgment that those orders were valid and that the plaintiff is entitled to the refunds.   Aluminum Company of America v. Admiral Merchants Motor Freight, Inc., et al., supra. The defendants have filed motions for a new trial and to alter and amend judgment, which, in addition to reiterating several of the grounds previously urged in opposition to the motions, present several new theories in support of their contention that they do not owe the plaintiff any moneys under the orders of the Interstate Commerce Commission.

The initial new contention of the defendants is that the plaintiff's claims are barred by the one year statute of limitations contained in Section 16(3) (f) of the Interstate Commerce Act, 49 U.S. C. § 16(3) (f).[1]   The defendants' argument is that, although the suits involved herein were filed within one year after the final order of the Interstate Commerce Commission that directed the carriers to refund certain moneys to shippers like the plaintiff, the type of suit which the plaintiff originally filed sought "reparations" as opposed to "enforcement," with a claim for enforcement not being made until it filed its motions for summary judgment, which did not occur until more than one year after the date of the Commission order.[2] The defendants argue that a reparation proceedings is statutorily different than an enforcement proceedings and, even assuming the correctness of our prior decision that § 16 of Part I of the Act (which deals with railroads) has been incorporated into Part II of the Act (which deals with motor carriers) by § 205(g) of the Act, at the time the plaintiff attempted to convert its suits from claims for reparations to claims for enforcement, the cause of action for enforcement had been extinguished by the statute of limitations.

This contention of the defendants is clearly refuted by Rule 15 of the Federal Rules of Civil Procedure, particularly subsections (b) and (c) thereof.[3]   By

15. 49 U.S.C. § 16(2) provides in this regard:
    * * *   If the plaintiff shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit.

1. This section provides:
    A complaint for the enforcement of an order of the commission for the payment of money shall be filed in the district court or the State court within one year from the date of the order, and not after.

2. The chronology of events as involves this aspect of the defendants' motion is as follows.   The final order of the Commission was entered in its Docket No. 34971 on August 29, 1969.   The plaintiff's suits were filed on May 19, 1970, and its motions for summary judgment were filed on May 7, 1971.

3. Subsection (b) of Rule 15, Fed.R.Civ.P., provides that "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been

virtue of Rule 15(b), the issues raised in the motions for summary judgment must be treated as if raised in the pleadings because they were argued by the parties in the motions for summary judgment. All parties devoted a substantial portion of their briefs in support of and in opposition to the summary judgment motions, the only point in these proceedings in which these purely legal issues would be raised even if the motions were denied for factual reasons and the suits ultimately went to trial, arguing that the Court either possessed or lacked the power to grant enforcement of the Commission order under §§ 16(2) and 205(g) of the Act, 49 U.S.C. §§ 16(2) and 305(g). As the "new" theory of recovery asserted by the plaintiff in its motions for summary judgment clearly arose out of the transactions and occurrences alleged in the original complaints, the new matter relates back to the date of the original pleadings under Rule 15(c).

■ In opposition to the above conclusion, the defendants argue that the federal procedural rules cannot be used to create substantive rights. However, as Professor Moore has aptly stated:

The Federal Rules have broadened the meaning of the concept of "cause of action," shifting the emphasis from a theory of law as to the cause of action, to the specified conduct of the defendant upon which the plaintiff relies to enforce his claim . . . An amendment which changes only the legal theory of the action, or adds another claim arising out of the same transaction or occurrence, will relate back . . . [Various mechanical rules used to restrict the application of Rule

15(c)] are properly rejected, since they largely reflect attempts to limit relation back to the same "cause of action," when the Rule has abandoned that concept in favor of the "same transaction or occurrence" test.[4]

As suit under §§ 16(2) and 205(g) of the Interstate Commerce Act does not present the problems of defining procedural versus substantive rights and the effects thereon of the Federal Rules which are often present in diversity cases when dealing with state created rights, cf., Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), we do not believe the defendants' objections to the Rules are well founded. Accordingly, we conclude that the plaintiff's claims for enforcement of the Commission order relate back to the time it filed its complaints and are not barred by the statute of limitations.

The second main new contention of the defendants deals with the scope of relief available to the plaintiff under § 205(g) of the Act, 49 U.S.C. § 305(g).[5] Defendants urge a particularly narrow reading of Section 205(g), claiming that it only provides for judicial review of orders entered by the Commission under Part II and for relief *from* such orders. The defendants apparently concede that Section 205(g) incorporates into Part II selected portions of the relief provisions of Part I but not all of them. Apparently, the defendants contend that the plaintiff would be entitled by virtue of Section 205(g) to review of the Commission's refund order here involved in order to determine its validity but not

---

raised in the pleadings." Subsection (c) provides for the relation back to the date of the original pleading of any new claim or defense asserted in an amended pleading, providing the new claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

4. 3 Moore's Federal Practice § 15.15 [3], pp. 1027, 1028, 1032.

5. This section provides in part as follows: Any final order made under this part [Part II of the Act which relates to motor carriers] shall be subject to the same right of relief in court by any party in interest as is now provided in respect to orders of the Commission made under Part I . . .

to obtain its enforcement, and only if it desired relief *from* but not *under* such order.

▇ This reading of § 205(g) is neither logical nor persuasive. If Congress had intended that only injured parties who wanted relief from a Commission order entered under Part II of the Act were entitled to the scope of review authorized under Part I, it obviously would have chosen language limiting such relief to any "party injured" or "aggrieved party" rather than to "any party in interest," the language it did utilize. "Any party in interest" obviously includes the total universe of people affected by· a Commission order, both those who are injured by it and those who are benefitted and who equally as obviously would have no desire to have relief *from* such an order but whose only interest would be to have that order entered and its specific benefit enforced.

The defendants refer the Court to numerous decisions wherein, they state, it was held that only the Commission could obtain an enforcement order from the courts to enforce its orders or regulations entered under Part II of the Act and that section 205(g) does not create or preserve a private right of action for damages against motor carriers.[6] We have examined each of these cases and conclude that they are not applicable because they did not, with one exception, even involve Section 205(g)[7], and none of the cases involved a suit by an obviously interested party for the payment of moneys specifically ordered by the Commission.[8]

The defendants further argue that the courts have refused to apply sections of one part of the Act to other parts or to imply a cause of action provided for in one part into another part where it is not expressed. We do not have any quarrel with this proposition of law but do not find it apposite to the specific issue before us since the language of § 205(g) of Part II indicates that it does in fact incorporate Section 16(2) of Part I. We believe that the general provisions of law urged by the defendants are accurate insofar as they relate the private suits seeking to enforce the provisions of Part II of the Act that have been left to the sole province of the Commission, but do not have any bearing upon the construction of § 205(g) when shippers are seeking to obtain payment from a motor car-

---

6. Baggett Transportation Co. v. Hughes Transportation, Inc., 393 F.2d 710 (8th Cir. 1968) ; Riss & Co., Inc. v. Association of American Railroads, 178 F.Supp. 438 (D.D.C.1959) ; McFaddin Express, Inc. v. Adley Corp., 363 F.2d 546 (2d Cir. 1966), cert. denied 385 U.S. 900, 87 S.Ct. 206, 17 L.Ed.2d 132 (1966) ; Hill's Jitney Service, Inc. v. Stiltz, Inc., 238 F.Supp. 881 (D.Del.1965) ; Charles Noeding Trucking Co. v. United States, 29 F.Supp. 537 (D.N.J.1939) ; Consolidated Freightways, Inc. v. United States, 216 F.2d 543 (9th Cir. 1954) ; Hamper v. Transcon Lines Corp., 425 F.2d 1178 (10th Cir. 1970).

7. The only case of the group cited by the defendant that had any nexus to § 205(g) is *Charles Noeding Trucking Co., supra.* That case only briefly referred to § 205 (g), then designated as § 205(h), and merely concluded that a trucking company was authorized by that section to bring suit against the Commission in an attempt to overrule a final order of the Commis-

sion removing a partial statutory exemption. 29 F.Supp. at 543–544.

8. The cited cases dealt with (1) suits by one motor carrier (or railroad) against another motor carrier asserting that the latter was operating without a statutorily required certificate of convenience and necessity or beyond such certificate that it did possess and asking for an injunction against the continuation of such practices and/or money damages (*Baggett, McFaddin, Consolidated Freightways,* and *Riss & Co.*) ; (2) a suit by a private party against a motor carrier seeking to enjoin the latter from operating with defective motor equipment (*Hamper*) ; and (3) a suit by a motor carrier against the Commission seeking to set aside a Commission order removing a partial statutory exemption from the scope of the Act (*Charles Noeding Trucking Company*). It is clear, that the type of suit with which we are involved here is of a completely different nature than the suits involved in the cases to which the defendants refer.

rier pursuant to an order of the Commission which directs such payment and which has been reviewed and upheld by the United States Supreme Court. Because the defendants have not suggested any new theory of merit in their attempt to persuade the Court to reverse its prior decision, we adhere to our prior conclusion that § 205(g), by its terms, incorporates into Part II of the Act § 16(2) of Part I of the Act so as to allow a shipper to sue a motor carrier to compel the latter to comply with an order of the Commission for the payment of money.

Another contention urged by the defendants is that the Commission's refund order here in question does not involve "an order for the payment of money" and therefore § 16(2) of the Act is not available to plaintiff. In support of this conclusion, the defendants cite the statements of the three-judge court in Admiral-Merchants Motor Freight, Inc. v. United States, 321 F.Supp. 353, 357 (D. Colo.1971), aff'd, 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37 (1971). A close reading, however, of that opinion will disclose that the conclusion of the court was a restricted one. The question before it was whether a three-judge tribunal was proper in that case under 28 U.S.C. §§ 2321 and 2325.[9] The court, having heard the matter as a three-judge court and all judges being in agreement on the merits, concluded in announcing its decision that it possessed jurisdiction that the case was primarily concerned with the efforts of the Commission to uphold its jurisdiction, notwithstanding that its decision might have some effect on the efforts of shippers to obtain the refunds ordered by the Commission.[10]

A reading of the entire opinion indicates that the three-judge court was determining that it possessed jurisdiction, not that it was determining whether suits to *enforce* refunds could properly be brought under §§ 16(2) and 205(g) of the Act. Certainly its conclusions as to its own jurisdiction do not foreclose this Court from holding that the refund orders involved[11] are orders for the payment of money sufficient to bring these suits within the ambit of § 16(2).

The phraseology of the controverted refund provisions which the three-judge court found the truckers to have agreed to as a condition precedent for the granting of the desired continuance indicates that they must be deemed as orders for the payment of money as

9. These sections provide in part:
  28 U.S.C. § 2321. The procedure in the district courts in actions to enforce, suspend, enjoin, annul or set aside in whole or in part any order of the Interstate Commerce Commission other than for the payment of money or the collection of fines, penalties and forfeitures, shall be as provided in this chapter. * * *
  28 U.S.C. § 2325. An interlocutory or permanent injunction restraining the enforcement, operation or execution, in whole or in part, of any order of the Interstate Commerce Commission shall not be granted unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

10. The Court stated in this regard:
  . . . [w]e do not regard this case as an action for the payment of money. Its primary concern is the effort of the Commission to uphold and protect its jurisdiction.
  It may possibly be that the decision of this Court will have some effect on the effort of the shippers here to obtain refunds. Nevertheless, the instant review is not to be classified as an action to enforce the payment of money or the collection of fines, penalties and forfeitures. The plaintiffs have brought the suit here seeking annulment of an order of the Commission. Because of the high importance of the case we feel dutybound to entertain this suit and to determine it on its merits. We therefore reject these questions concerning our jurisdiction. * * * 321 F.Supp. at 357–358.

11. These orders are set out in their entirety in our original decision, Aluminum Company of America v. Admiral-Merchants Motor Freight, Inc., et al., *supra*, at 677, nn. 1, 2, and 3.

concerns § 16(2) because that language can have absolutely no other meaning.[12] The mere fact that no such Commission order has ever previously been classified as an order for the payment of money under § 16(2) reflects nothing more significant than that the orders involved in the Commission proceedings underlying these lawsuits were the first such orders ever issued by the Commission that did not deal with either common law or statutory reparations. As the validity of the orders has been upheld, removing that issue from this litigation, we can reach no conclusion other than that these orders were "for the payment of money" within the scope of § 16(2) of the Act and that the jurisdictional decision of the Denver three-judge court does not compel us to conclude otherwise.

Another ground urged by the defendants as a basis for their motion to alter and amend judgment is that the order of the Commission is confiscatory. We note in this regard that the three-judge district court concluded that the carriers had accepted the controverted conditional rate refund order tacitly or impliedly by withdrawal of their original objection to that order.[13] Therefore, if the order were confiscatory, the carriers should not have accepted it, and should have protested it at every stage of the proceedings before the Commission as well as before the courts, as opposed to the course of action they chose of failing to protest such order until after the Commission had terminated the proceedings adversely to them. We believe that they have waived any right now to complain of the allegedly confiscatory nature of the order.

Even if such waiver had not occurred by their withdrawal of objection at the Commission proceedings, the carriers would nevertheless be precluded from now raising the consficatory nature of the order because the time to have so raised that objection was when they attempted to overturn the order before the three-judge court. The confiscatory nature of the order, if any, would have been grounds for overturning the order and a basis for finding it invalid. However, the order has been found valid by the Supreme Court which precludes any further review thereof. We are at a loss to understand what the defendants view the Supreme Court as having done when it affirmed the decision of the lower court. It seems obvious that if the order were indeed as invalid as the carriers now contend, the Supreme Court could not have affirmed the three-judge court decision. We conclude, therefore, that the issue of the alleged confiscatory nature of the Commission order is no basis for vacating the judgment previously entered in this suit because (1) the defendants waived that contention when they accepted the terms and benefits of the Commission's conditional refund order and (2) in any event, that objection which goes to the validity of the order is irrelevant to the proceedings before us since the Supreme Court has affirmed its validity.

The defendants finally contend that summary judgment should have been denied because a factual ques-

---

12. The Commission stated, for example, "that respondents be, and they hereby are, ordered to make refunds to the shippers on any shipment moving after May 20, 1968 to the extent that the increases or any portion thereof under investigation herein are not approved by the Commission." I.C.C. Order of April 25, 1968, Docket No. 34971. After its investigation led the Commission to conclude that the carriers had not met their statutory burden of proving the reasonableness of their pro-

posed rates, the Commission ordered that "the [carriers] be, and they are hereby, required to refund to shippers the charges on shipments moving after May 20, 1968, to the extent that such charges included the increases found not shown to be just and reasonable." I.C.C. Order of June 5, 1969, Docket No. 34971.

13. Admiral-Merchants Motor Freight, Inc. v. United States, *supra*, 321 F.Supp. at 356, n. 7, 358.

tion exists as to whether the plaintiff has been injured or, as stated elsewhere in its brief, the plaintiff has suffered any damages. The carriers assert that under § 16(2) the findings and order of the Commission are only prima facie evidence of the facts asserted therein [14] and that they were entitled to rebut this prima facie case at a trial. We agree with the defendants that, if a material issue of fact existed concerning the amount of money due the plaintiff under the Commission's order, the carriers would be entitled to ventilate their arguments at a trial. However, the defendants and the plaintiff stipulated the amount of the award that would be due the plaintiff if the Court believed that the plaintiff was entitled to judgment on the issue of liability. Because § 16 (2) of the Act states that the trial shall proceed like other civil suits for damages, and because the parties' stipulations indicated that no material issue of fact existed which would preclude the granting of summary judgment under the normal application of the Federal Rules of Civil Procedure, we do not believe that any trial is necessary to determine the extent to which the plaintiff has been injured or damaged. Accordingly, this argument presents no valid ground for vacating our prior judgment.

We have reviewed all other grounds asserted by the defendants and do not believe them to be of merit. On the basis of this opinion and our prior opinion originally granting the plaintiff's motions for summary judgment, we conclude that the plaintiff is entitled to such judgment and that the defendants' motions for a new trial and to alter and amend judgment must be denied. An appropriate order will enter in each of these cases.

14. § 16(2) of the Act, 49 U.S.C. § 16(2), states in this regard:
> Such suit [as authorized above when a carrier fails to comply with a Commission order for the payment of money] . . . shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated, . . .