**UNITED STATES of America, for the Use of M. G. ASTLEFORD Co., Inc., a Minnesota corporation, Plaintiff,**

v.

**S. J. GROVES & SONS COMPANY et al., Defendants.**

**No. 3–70 Civ. 9.**

United States District Court, D. Minnesota, Third Division.

Oct. 7, 1971.

Briggs & Morgan by John L. Devney, St. Paul, Minn., for plaintiff.

Maslon, Kaplan, Edelman, Borman, Brand & McNulty by Hyman Edelman, Minneapolis, Minn., together with Fox & McGregor by Malcolm P. McGregor, Washington, D. C., for defendants.

NEVILLE, District Judge.

Use-plaintiff M. G. Astleford Co., Inc., a Minnesota corporation, commenced this action against defendant S. J. Groves and Sons Company, a contractor and its two sureties. The complaint alleges that Groves, pursuant to a contract with the Army Corps of Engineers entered into on or about June 30, 1965, agreed to construct a dam on the Eau Galle River near Spring Valley, Wisconsin. Certain portions of the work required by this contract were subcontracted on August 4, 1965, to use-plaintiff Astleford. Pursuant to 40 U.S.C. § 270a (the Miller Act), Groves duly furnished payment and performance bonds written by the other defendants.

The complaint further alleges that all labor and materials called for in the Astleford subcontract were furnished,

that the prosecution of the work embodied in the subcontract ultimately involved more than was specified or contemplated in the subcontract, and that Astleford has received no payment for such extra work. This extra work is alleged to have been required by certain changes of circumstances beyond Astleford's control and by Groves' various breaches of contract. There is also a claim for "equitable adjustment" on the theory that the subcontract was "abandoned." Specific breaches, and consequential damages, are enumerated in paragraph XI of the Amended Complaint. It does not appear that the Amended Complaint materially alters the substance of the claims or the items of damage for which recovery is sought in the original complaint, though the *ad damnum* prayer is reduced.

Specifically, the Amended Complaint alleges the following conduct which it is claimed gives rise to liability for damages: (1) Astleford performed certain work at the request of Groves which was not specified in the subcontract and for which Groves has not paid Astleford (¶ VIII), and (2) Groves breached the subcontract by failing to adhere to the schedule promised in the subcontract (¶ IX(a)), by failing to prepare work sites and conditions as promised in the subcontract (¶ IX(b)), by compelling Astleford to do certain contract work in times, manners, sequences, and techniques otherwise than as agreed upon (¶ IX(c)), by compelling Astleford to do work beyond the scope of the contract (¶ IX(d)), and by failing to pay Astleford for extra costs incurred by reason of changed circumstances (¶ IX(e)).

As the proximate result of such conduct, Astleford claims various elements of damages as specified in ¶ XI of the Amended Complaint. Without elaborating such claims with specificity, they include: extra overhead, extra labor costs —both because more man-hours were involved and because the work scheduled to be done when one pay scale prevailed

was delayed until after an upwards-renegotiation of the scale—extra equipment costs, idle equipment time, materials costs involved in the furnishing and pouring of concrete in excess of that required in the specifications of the subcontract, and in the construction of certain tunnel forms.

Defendants answered denying liability and defendant Groves has asserted a counterclaim to which Astleford has replied. Defendants have moved for a Summary Judgment on the grounds that (1) the allegations of the complaint—both the original and the proposed amended complaint—do not state a cause of action under the Miller Act, 40 U.S.C. § 270b, and the court is therefore without jurisdiction, (2) Clause 10 of the subcontract and Clauses (b) and (c) of Attachment No. 1 thereto exculpate Groves and operate to limit Astleford's remedy for delays, hindrances or interferences to a corresponding extension of time within which to perform its promised work, and (3) Clause 5(d) of the prime contract between Groves and the United States as incorporated by the subcontract provides only for an extension of time in these circumstances. In other words, the defendant claims that this is not a Miller Act case since it involves only "delay" damages and not a claim for labor and material rendered and furnished, and that in any event the governing contract precludes the relief requested.

■ On the question of allowing the filing of plaintiff's amended complaint the court has little hesitation. The case is yet some months from trial; defendants themselves earlier were granted permission to file an amended answer and counterclaim; Rule 15 of the Federal Rules of Civil Procedure contemplates liberality in allowing amendments; and for these reasons the amendment is allowed.

The two questions remaining are whether the motions for summary judgment should be granted, and whether this

court should assume pendent jurisdiction or dismiss at least a portion of the claims contained in plaintiff's complaint.

 Plaintiff resists defendants' motion for summary judgment on the ground that there is at least one primary genuine issue of fact involved. It claims that the "boiler plate" "no-damage" clause when strictly construed against Groves, in light of other contract provisions, the contract negotiations, the surrounding circumstances, and the subsequent behavior of the parties does not mean that there could be no claims for extra compensation for any delays, interferences, or hindrance caused by the defendant Groves. It particularly asserts that its damages are at least in large part, based in reality on claims for labor and material.

Likewise, defendant resists plaintiff's motion for partial summary judgment on the ground that there is at least one primary genuine issue of fact involved. Plaintiff would have the court determine summarily that Groves is guilty of a breach of contract. Defendant claims that there has been no breach wholly or partially and that any delays were not its fault. Again, the contractual intent and particularly the facts concerning the unanticipated artesian water difficulty must be ascertained before ruling can be made on whether there was a breach of contract. The court cannot well interpret or apply the specific terms of the contract without evidence of the facts as to what occurred, the effect of the delay, and the behavior of the parties and other matters which are factual issues. It would seem to the court that there are numerous questions of fact which can be resolved only after a trial.

The Eighth Circuit several times has indicated and stated that summary judgment under Rule 56 of the Federal Rules of Civil Procedure is an extraordinary remedy and should be granted very, very sparingly.

"A summary judgment should be used only in 'extreme' situations. To grant a summary judgment under Rule 56, a party must be entitled to relief 'beyond all doubt' without 'room for controversy'. Recovery must be barred beyond 'any discernible circumstances.' See Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 189 F.2d 213 [1951]. As Judge Parker said in Pierce v. Ford Motor Co., 4 Cir., 190 F.2d 910, at 915 [1951]:

'* * * It is only where it is perfectly clear that there are no issues in the case that a summary judgment is proper. Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented. * * *' "

Williams v. Chick, 373 F.2d 330, 331 (8th Cir. 1967).

"We need not repeat in detail our concern of summary dismissal under Rule 56. If there exists the slightest doubt as to a factual dispute or 'genuine issue of fact,' summary judgment should be denied. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); Williams v. Chick, 373 F.2d 330 (8 Cir. 1967); Larsen v. General Motors Corp., 391 F.2d 495, 8 Cir., March 11, 1968."

Clausen & Sons, Inc. v. Theo. Hamm Brewing Co., 395 F.2d 388, 389 (8th Cir. 1968).

For the above reasons, the court must deny both motions for summary judgment.

 This court is next urged to deny any pendent jurisdiction. It is quite clear that both plaintiff and defendant Groves are Minnesota corporations and therefore

this court has no diversity jurisdiction. Jurisdiction must depend on the applicability of the Miller Act.

Defendants cite respectable authority that the Miller Act provides relief to subcontractors only for unpaid labor and material furnished and does not countenance consequential and "delay" damages. Assuming *arguendo* the validity of this position, this court is thus asked to try a case the great bulk of which so far as monetary claims are concerned, is a controversy between two citizens of Minnesota and properly could have been brought in State Court. Defendants admit however (without admitting the validity of the claims) that circa $15,000 or approximately 10% of the claims asserted in plaintiff's complaint are properly designated as Miller Act claims. This court thus will have to try this lawsuit in any event, whether or not plaintiff's Miller Act claims ultimately are upheld. The consideration is whether the court should broaden the scope of the lawsuit it must try, or dismiss as to the breach of contract and "delay" damages claims. Plaintiff of course does not agree that only 10% of its claims are cognizable under the Miller Act and takes the position that all are proper Miller Act claims, or that even if some not be, that this court ought to exercise pendent jurisdiction and decide the entire controversy. An immediate difficulty presents itself were the court inclined to adopt defendants' position for the court cannot of course in broad general language merely dismiss the non-Miller Act claims, without some specificity. The determination of which are and which are not proper Miller Act claims will itself require evidence and a trial, unless the court can rule as a matter of law in the nature of a summary judgment. This comes full circle and gets back to the reasons above stated as to why the court has denied summary judgment.

In considering pendent jurisdiction to the extent, if at all that plaintiff's claims are not within the Miller Act, the court should consider whether the Federal claim is substantial, at least to the extent that it can overcome a motion to dismiss for failure to state a claim, and whether the Federal and state claims arise out of the same operative facts.

" * * * In re Union National Bank & Trust Co. of Souderton, Pa., 298 F. Supp. 422 (E.D.Pa.1969); Edward J. Moriarty & Co. v. General Tire & Rubber Co., 289 F.Supp. 381 (S.D. Ohio 1967); Robinson & Sons Inc. v. Mister Donut of America Inc., 270 F.Supp. 99 (D.Mass.1967). A mere adverse decision on the merits of the federal claim does not mean that it is insubstantial. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933)." 316 F.Supp. at 1049

Saint Anthony-Minneapolis, Inc. v. Red Owl Stores, Inc., 316 F.Supp. 1045 (D. Minn. 1970).

█ It would appear that in a case such as at bar, where the federal claim can withstand a motion to dismiss for lack of jurisdiction, it is not insubstantial in the sense of dictating that the court deny pendent jurisdiction of the entire controversy.

█ The most recent word of the Supreme Court is found in United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966):

"* * * The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. * * * The state and federal claims must derive from a common nucleus of operative fact." 383 U.S. at 725, 86 S.Ct. at 1138.

Relating this to the present case, it is obvious that the federal and state claims arise out of the same set of facts. The defendants cite this case, however, for their contention that where the monetary value of the state claims said in this case to be 90% substantially predominates over the federal claims, pendent jurisdic-

tion cannot lie. At pp. 726–727, 86 S.Ct. at p. 1139 the Supreme Court states:

"* * * Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. *There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong.*"

In the case at bar, the state claim is "closely tied" to a question of a federal policy delineated by the Miller Act, i. e., the protection of those who furnish labor and supply materials for government construction projects. This court is not persuaded by defendants' "tail wagging the dog" argument as long as this court has to deal with the "tail" in any event and it is a part of the "dog". Further, in the broad overall administration of justice, disregarding technical niceties, it would seem appropriate that the parties have one forum for the determination of their controversies in one trial. This court, in passing on a question of ancillary jurisdiction, stated:

"Basically law is common sense. Paraphrasing the late Chief Justice of the United States Supreme Court, Edward Douglass White, whenever a rule of law does not make common sense it should not be followed. It is unthinkable under our present advanced state of judicial administration to require the same case be tried separately in two different courts. Duplicitous expenses and an unjustifiable imposition on an already overtaxed judicial system run contrary to recent advancements in legal rules of procedure—most notably our own model Federal Rules of Civil Procedure.

* * * Remitting the other plaintiffs to the state courts would cause needless duplicity of trials and proof,

while their retention here will not alter the basic nature of the lawsuit or result in a substantial increase in the evidence submitted. * * *"

Dixon v. Northwestern National Bank of Mpls., 276 F.Supp. 96, 103 (D.Minn. 1967).