**LAND O'LAKES, INC., Plaintiff,**

v.

**UNITED–BUCKINGHAM FREIGHT
LINES, INC., et al., Defendants.**

Nos. 4–71 Civ. 221 to 4–71 Civ. 238,
4–71 Civ. 240.

United States District Court,
D. Minnesota.
Fourth Division.

Nov. 16, 1972.

Doherty, Rumble & Butler, by James F. McGovern and Joseph R. Kernan, Jr., St. Paul, Minn., for plaintiff.

James L. Nelson, St. Paul, Minn., Jones, Meiklejohn, Kehl & Lyons, by Alvin V. Meiklejohn, Jr., and Arthur Ronald Hauver, Denver, Colo., for defendants.

NEVILLE, District Judge.

Nineteen lawsuits [1] against as many motor carriers have been commenced by plaintiff Land O'Lakes, Inc., seeking a refund of freight charges ordered by the Interstate Commerce Commission at various times in Increased Rates and Charges from, to and between Middlewest Territory, Doc. No. 34571 and 34971, 355 ICC 142 and 397. Each case presently is before the court on defendants' motions to dismiss for failure to state a cause of action or in the alternative to refer the cases back to the Interstate Commerce Commission (ICC) and on plaintiff's motion, in part a speaking motion made at the hearing, for leave to amend the various complaints to assert a new theory and statutory basis for recovery. All defendants are members of the Middlewest Motor Freight Bureau, Inc. and appear by common counsel. Plaintiff is a shipper and all defendant carriers are subject to Part II of the Interstate Commerce Act, 49 U.S.C. § 301 et seq. While the cases technically are not ripe for summary judgment and the pending motions are not so styled, in the court's view no material issues of fact appear to be involved and the court believes it is in a position to determine the question of liability and validity of the ICC orders without any further proceedings.[2]

A statement of the controlling facts is necessary to an understanding of the cases.

The ICC refund orders in question resulted from an unsuccessful attempt by members of the Middlewest Bureau to obtain authority to increase certain rates and charges. In accordance with customary ICC procedure,[3] the Bureau on behalf of all present defendants and other carriers filed and published tariff schedules with the ICC specifying various increased rates and charges which the carriers proposed to charge, to take effect April 1, 1968. The Board of Suspension of the ICC decided neither to investigate nor to suspend the increases, and they therefore became effective on that date.

But the matter did not end here. Upon the request of many shippers, the entire Commission reviewed the proposed increased rates and ordered an investigation into their legality. The Commission did not, however, order a suspension of the proposed increases but ordered a hearing to be held May 20, 1968. The carriers, through the Middlewest Bureau, together with the United States Department of Transportation and General Services Administration, re-

---

1. An additional case Land O'Lakes, Inc. v. Widholm Transfer Co., 4-71 Civ. 239, was filed May 24, 1971 but counsel have informed the court that proper service of process never has been effected. No motions were made in this particular case.

2. Since there are common counsel in all cases and the same facts are involved (except the amount of damages represented by shipping charges paid) counsel have stipulated the cases may be consolidated and considered together for purposes of the present motions.

3. The Interstate Commerce Commission does not initially determine the tariff schedules under which the carriers must

charge rates; rather, the carriers file proposed tariff schedules with the Commission and the Commission then has the power, either on its own initiative or the initiative of shippers, (1) to suspend the rates pending an investigation for a period of up to seven months, (2) to investigate the rates without suspending them, and (3) to cancel the rates if the investigation determines that those rates are unjust and unreasonable. The Commission may, of course, refuse to investigate, suspend or cancel any rates which the carriers have filed with the Commission in which event they become the applicable rates. See generally 49 U.S.C. § 316(g).

quested a 90 day delay in the hearing so as to be able adequately to prepare an evidentiary presentation. The Commission approved the request but conditioned its approval upon an agreement by the carriers that they would refund any amounts for rates paid on traffic moving after May 20, 1968, the date scheduled for the original hearing, to the extent that the increased rates were subsequently not approved.[4] The order containing the refund condition was dated April 25, 1968 and reads in part as follows:

"That respondents [defendants herein] be, and, they are hereby, ordered to make refunds to the shippers on any shipment moving after May 20, 1968, to the extent that the increases or any portion thereof under investigation herein *are not approved by the Commission.*" [Emphasis added.]

The carriers then petitioned the Commission for reconsideration of this order, challenging particularly the refund provision contained therein. The carriers shortly however withdrew their petition for reconsideration apparently when it became clear that the ICC would go forward with the hearing on May 20, 1968 if the carriers did not accede to the refund condition. The hearing was not held before the Commission until August 19, 1968. Approximately ten months later on June 5, 1969, the ICC cancelled the proposed increased rates finding that such "have not been shown to be just and reasonable". Pursuant to the April 25, 1968 order, the carriers were directed to refund to their shippers that portion of the rates which the Commission had found not shown to be just and reasonable. This order provided:

"It is further ordered, that, in accordance with the Order entered herein on April 25, 1968 the respondents be, and they are hereby, required to refund to shippers the charges on shipments moving after May 20, 1968, to the extent that such charges included the increases herein found not shown to be just and reasonable."

The Commission subsequently denied several requests by the carriers to reconsider that order and it was finally reaffirmed and became effective on October 27, 1969. This latter order provided:

". . . that the respondents will hereinafter in accordance with the said decision of June 5, 1969, make refunds to shippers presenting their claims to the carriers supported by paid freight bills or other appropriate evidence." Increased Rates and Charges, From, To and Between Middlewest Territory, I.C.C. #34571

The Middlewest Motor Freight Bureau, acting for carriers including the present defendants, perfected an appeal from the refund portion of the ICC order to a three-judge court sitting in Denver, Colorado which found the order to be valid. Admiral-Merchants Motor Freight, Inc. v. United States, 321 F. Supp. 353 (D.Colo.1971).[5] This decision was affirmed by the United States Supreme Court without opinion, Admiral-Merchant Motor Freight, Inc. v. United States, 404 U.S. 802, 92 S.Ct. 51, 30 L. Ed.2d 37 (1971). Several quotes from the three-judge opinion are apposite and

---

4. Excerpts from the relevant ICC orders can be found in Admiral-Merchants Motor Freight, Inc. v. United States, 321 F.Supp. 353 (D.Colo.1971), aff'd 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37 (1971).

5. September 30, 1971 this court in the cases at bar signed an order staying further proceedings on the stipulation and representation of the parties that "The outcome of the instant proceeding is largely dependent upon the result of the appeals taken [to the United States Supreme Court] from [the three-judge decision] and it is possible that it will not be necessary to try this case." This prediction seems not to have come to pass, for despite the United States Supreme Court affirmance, defendants are contesting liability on a number of grounds.

will form a basis in part for what is said hereinafter:

". . . Plaintiffs assert that insofar as that order [of the Commission] purports to or does order them to refund certain portions of a disputed rate increase schedule, that portion of the order should be set aside and annulled, and the enforcement of it enjoined as beyond the statutory authority and jurisdiction of the Commission." 321 F.Supp at 354.

"We must decide whether an order of the Commission in which a rate increase is denied, which order directs repayment of interim rates, if determined to be invalid, and which refund order was entered by the Commission as a condition of granting an extension of time to the carriers at their request, is invalid and subject to a judgment annulling the same. We are not involved with the Commission's order denying the increase. We are limited to the propriety and validity of a conditional rate refund order, which order was tacitly or impliedly (by withdrawal of objection) accepted by the carriers, plaintiffs herein." 321 F.Supp. at 358.

"An even stronger argument for refusal to annul the Commission's order is the doctrine of equitable estoppel. We have in mind the principle which imposes an obligation on a person to live up to his representations or conduct in circumstances where inequitable consequences would result to persons having the right to rely, and who in good faith did rely on the representations made. Applied to the case at bar the Commission certainly relied on the carriers' withdrawal of their jurisdictional objection to the refund condition. The Commission's reliance was evidenced by its failure to vacate the order. It did not have to anticipate that the carriers would renege. The carriers' withdrawal of their timely objection was a positive act which evidenced willingness to go along with the condition imposed.

It can also be argued that there was a binding waiver on the part of the carriers resulting from their affirmative withdrawal of their objection. . . ." 321 F.Supp. at 359.

"We are unable in good conscience, in view of the circumstances presented, to annul the order of the Commission. The Commission was acting in good faith in granting the extension, and the carriers were at the time agreeable to acceptance of the benefits of such an extension order. Their present posture appears to us to be grossly inequitable and not deserving of court intervention. While we do not commend the procedure as one which should be or could be practiced, we do hold that the peculiar facts of this case, arising as they did, are such as to not justify the granting of the relief requested, namely annulment of the Commission's order and approval of the carriers' conduct.

The practical effect of this ruling is not before us since this is not an enforcement proceeding.

We conclude that the complaint and the cause of action herein be and the same are hereby dismissed." 321 F. Supp. 360.

## PLAINTIFF'S MOTION TO AMEND COMPLAINTS

Plaintiff's pattern complaints comply with the concept of notice pleading. They assert a cause of action under part II of the Interstate Commerce Act, specifically 49 U.S.C. § 304a, state that plaintiff is a Minnesota corporation and in each instance that defendant is a common carrier by motor vehicle, bottoming its jurisdictional claim on 28 U. S.C. §§ 1336 and 1398 granting United States District Courts jurisdiction in connection with Interstate Commerce Commission orders. It also claims pendant jurisdiction for common law causes of action of equitable estoppel or restitution, third party beneficiary contract and perhaps others such as unjust enrichment. Each complaint alleges plain-

tiff is a shipper, that it has paid the freight charges then under investigation, that the order of the Interstate Commerce Commission was entered June 5, 1969 denying approval of the requested increased rates and ordering a refund to shippers, that the amount of the claimed excess was paid and ends with a prayer for judgment. The complaints were filed May 14, 1971 and obviously plaintiff's counsel since has read the later case emanating out of the Northern District of Illinois, Aluminum Co. of America v. Admiral Merchants Motor Freight, Inc., 337 F.Supp. 674 (N.D.Ill. 1972). In this opinion Judge Will held that such an action as plaintiff has brought is maintainable under 49 U.S.C. §§ 16(a) and 305(g), neither of which statutes are mentioned in plaintiff's complaint. Plaintiff contends that under the concept of notice pleading he has complied with Rule 8 of the Federal Rules of Civil Procedure including "a short and plain statement of the claim showing that the pleader is entitled to relief", and that it is not necessary to plead the specific theory of recovery nor the strict legal basis therefor, if in fact the ultimate facts pleaded are sufficient to sustain a claim. Siegelman v. Cunard White Star, 221 F.2d 189 (2d Cir.1955); Nord v. McIlroy, 296 F.2d 12 (9th Cir. 1961). Rule 8(f) provides that pleadings shall be construed so as to do substantial justice and Rule 15 provides that leave of court to amend pleadings shall be freely granted when justice so requires. It is clear to the court first that the amendment perhaps is not necessary but second that it should be allowed in any event. Further, under Rule 15(c) such amendment relates back to the date of the service of the original pleading since the claim "arose out of the conduct, transaction, or occurrences set forth or attempted to be set forth in the original pleading." Plaintiff's amendments to the various complaints are therefore allowed. United States v. S. J. Groves & Sons Co., 53 F.R.D. 656 (D. Minn.1971); Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Plaintiff's original complaint seeks recovery under 49 U.S.C. § 304a as last amended September 9, 1965, dealing with "overcharges" and in addition under 304a(2) referring to a shipper's right "for recovery of reparations". The latter term is defined in part as ". . . damages resulting from charges for transportation services to the extent that the Commission . . . finds them to have been unjust and unreasonable . . . ."

Plaintiff's now amended complaint, or most recently advanced theory, relies on 49 U.S.C. § 305(g) which provides in part:

"Any final order made under this chapter shall be subject to the same right of relief in court by any party in interest as is now provided in respect to orders of the Commission made under chapter 1 of this title". [Part I of the Interstate Commerce Act]

49 U.S.C. § 16(2) (which comes from what is known as Part I or in the U.S. C.A. as Chapter I of the Interstate Commerce Act) provides:

"If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in the district court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the road of the carrier runs . . . a complaint setting forth briefly the causes for which he claims damages, and the order of the commission in the premises. Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages . . . ."

The contention is that 305(g) incorporates 16(2) and that plaintiff thereby has a cause of action. For reasons hereinafter stated the court agrees with plaintiff's contention on this theory and on the statutory reparations theory and holds defendants are liable to make

refunds to plaintiff for excess charges from May 20, 1968 to August 31, 1969.

It seems rather clear to the court by a reading of the very statutory definition contained in 304a(6) (as amended) that this is not a case of "overcharges" and that such a cause of action does not here exist. Further, in the court's view of the case it need not concern itself with plaintiff's common law theories of recovery. Rather obviously diversity jurisdiction does not exist here and the court need not involve itself in the somewhat difficult question of pendant jurisdiction. Plaintiff's cause of action is statutory on either of the two theories discussed above and further consideration of other possible bases is not required, though 305(g) refers to "any party in interest" and plaintiff might argue it is among the class intended to be protected by analogy to the third-party beneficiary concept.

Defendants assert a number of grounds for dismissal which will be considered hereinafter seriatim.

## PLAINTIFF'S ALLEGED LACK OF A CAUSE OF ACTION

■ Defendants rely heavily on T.I.M.E. Incorporated v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959), which follows and cites the earlier case of Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951). *T.I.M.E.* holds that under part II of the Interstate Commerce Act—dealing with motor carriers—a private shipper has no statutory cause of action nor judicially enforceable right against a motor carrier for past exaction of unjust and unreasonable rates; this despite the fact that such a right does exist under Part I of the Interstate Commerce Act relating to railroads. They contend that under the familiar Rule of *expressio unius*, this controls. In expanding the Interstate Commerce Act to include motor carriers in 1935, Congress did not include in Part II all the provisions contained in Part I and thus, so the court held, must have intended under *exclusio unius alterius* that such rights not appertain to shipping by motor carrier. The function of the ICC in determining rates was held to be prospective and not retrospective. The difficulty with this argument and the thing that impugns it is that Congress in 1965, obviously aware of this disparity [6] amended the law specifically to countenance a shipper's right for reparations, 49 U.S.C. § 304a(2), as a complement to 305(g) so that orders made under Part II (affecting motor carriers) shall be subject to the same right of relief in court by "any party in interest" as if made under Part I of the Interstate Commerce Act. Defendant takes the flat position in its brief that there is no private remedy for enforcement of an ICC order entered against motor carriers. This court cannot subscribe that this was or is the intent of Congress, there being no rational reason to distinguish between rail and motor carriers and Congress having expressed itself by the 1965 amendment. See *Admiral Merchants, supra,* 321 F. Supp. p. 358.

## JURISDICTION

■■ It is clear to the court despite defendants' contentions to the contrary that it has jurisdiction in these cases by virtue of 49 U.S.C. §§ 16(2), 304a, 305(g) and 28 U.S.C. §§ 1336 [7] and 1398. It is apparent that there is no diversity of citizenship at least in some of the cases and in any event the prayers

6. See a quote from the Congressional House Committee report at time of the 1965 Amendment contained in American Home Products v. A & B Transfer, Inc., N.D.Ill., 70 C 1562; 71 C 1236 to the effect that the amendment was designed to set aside the *T.I.M.E.* decision.

7. 28 U.S.C. § 1336(a) provides: "Except as otherwise provided by Act of Congress the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in part, any order of the Interstate Commerce Commission."

for relief in none of the cases reaches the jurisdictional amount of $10,000. A suit to enforce or recover on the basis of an ICC order or statute, however, needs no jurisdictional amount.

## THE VALIDITY OF THE ICC RE-FUND ORDERS

A substantial argument has been devoted to the thesis that the ICC had no authority to enter the type of order that it did requiring the payment of money by way of refund. It is not necessary for this court to address this contention at any length. Admiral-Merchants Motor Freight, Inc. v. United States, 321 F.Supp. 353 (D.Colo.1971), a three-judge court opinion above quoted, aff'd 404 U.S. 802, 92 S.Ct. 51, 30 L. Ed.2d 37 (1971), specifically considered the exact refund orders as here involved and found the same valid and to be within the jurisdiction of the ICC. These defendants were represented in that proceeding by the Middlewest Bureau and by the same counsel as appear in the case now *sub judice*. To argue to the contrary and to attempt to relitigate that issue here is not permissible. Without regard to the technical nicety of whether the three-judge case is *res judicata* or merely *stare decisis* or somewhere in between, such as collateral estoppel, nothing would seem clearer to this court than that the issue is settled and a challenge here unavailing. An order such as entered here by the Commission is a matter of public import and concern and effective and binding on all persons coming under it.

At least two other district courts have found in accord with this holding. See Aluminum Co. of America v. Admiral Merchants Motor Freight Inc., 337 F. Supp. 674 (N.D.Ill.1972); Aluminum Co. of America v. Burlington Truck Lines, Inc., et al., (N.D.Ill. May 3, 1972), published in Federal Carrier Cases (1972) ¶ 82,314, and S. S. Kresge Co. v. A & B Transfer, Inc., C.A. No. 34887 (E.D.Mich. 6/30/72). While defendants assert the validity of the ICC refund order was not directly before the court in Admiral-Merchants Motor Freight Inc. v. United States, the express language of the opinion quoted hereinabove indicates otherwise.

## WORDING OF ICC ORDER

Defendants assert that the ICC finding was a "scotch" finding in that the Commission did not find the rates to be "unjust and unreasonable" within the meaning of 49 U.S.C. § 316(e) but merely found that the filed increases "have not been shown to be just and reasonable". To this court this is an exercise in semantics. The Commission is charged with a duty to find rates just and reasonable before allowing them to be permanently in effect. 49 U.S.C. § 316(g) places the burden of proof on the carrier to show any proposed or filed increases to be just and reasonable. A finding by the Commission that the carriers did not sustain that burden is tantamount for all practical purposes to a finding that the proposed rates were unjust and unreasonable. Further, the original order of April 25, 1968 did not state that the obligation to make refunds would depend upon any particular finding by the Commission or the wording of it but merely that such should be made if the rate increases "are not approved". Nothing is clearer than that the Commission did not approve the increased rates, whatever its reasons or language used. To argue to the contrary borders on the frivolous.

## CLAIM OF RIGHT TO RELITIGATE QUESTION OF REASON-ABLENESS

Defendants assert that they are entitled in this court to relitigate the question of reasonableness of the rates which were disapproved by the Commission since 49 U.S.C. § 16(2) provides that "findings and order of the commission shall be *prima facie* evidence of its facts therein stated." To do so would of course put this court in the impossible position of attempting in a lengthy proceeding to exercise and apply the expertise of the ICC. Recognizing this and

**110**

the obvious difficulty attendant, defendants' motion requests a referral apparently under Section 304a(5) to the ICC for a redetermination of the question of just and reasonableness, hoping presumably that thereby the Commission might find some portion of the rate increase, if not the whole, to have been just and reasonable; that when and if such finding is adopted by a court it would thereby reduce the amount required to be refunded if it finally is determined that such refunds must be made. What has been said as to the effect of the three-judge court case of *Admiral-Merchants Motor Freight, supra*, again has put this question at rest. Defendants had their day before the Commission and were bested. They made much the same argument before the three-judge court. To ask the Commission now to attempt to find in retrospect what rates were or might have been reasonable some four to four and one-half years ago is unwarranted; further, a remand of the case to the Commission is an exercise in futility for already it has found the rates unjust and unreasonable as this court views it. 49 U.S.C. § 316(e) specifically authorizes the Commission to determine and prescribe lawful rates and to determine what rates are just and reasonable whether or not they correspond to requested or filed rates. By cancelling the increased rates filed and ordering refunds, the Commission found if not directly at least by clear inference that no rate in between what was requested and what had been charged was just and reasonable; if on the other hand it is defendants claim that they did not request any such in between rate finding, it would seem they should not now at this late date be able so to do. It is noted that the Commission's original order of April 25, 1968 contemplated the possibility of an in between rate by providing *"to the extent* that the increases *or any portion* thereof . . . are not approved" [emphasis added]. The Commission did not disapprove only a *portion,* but the entire. It should be noted

that a decision to the contrary has been rendered by a United States district court in the Northern District of Illinois in the so-far unpublished opinion of American Home Products Corp. v. A & B Transfer Co., 70 C 1562; 71 C 1236 (Sept. 29, 1972) where quoting the language in 49 U.S.C. § 16(2) the court denied summary judgment. In view of the history of this case and the fact that it has been the subject of a three-judge court and considered and affirmed by the United States Supreme Court, the reasoning of the *American Home Products* case is not adopted by this court. Had there been no proceedings other than an initial suit in this court, perhaps some argument would lie that without a determination of unjust and unreasonable rates having been made, reference should be had to the ICC for a determination of this question; but not under circumstances here present where such a determination by the Commission already has been made. Comfort for this view is found in the language in Middlewest Motor Freight Bureau v. United States, 433 F.2d 212 (8th Cir. 1970), where though not completely apposite, the court stated at p. 235:

> "Secondly, to require this procedure in a case such as this would require double litigation before the Commission of the same rates—once in the challenge to the tariff and again in the reparation proceeding. This seems to us to be an unwarranted burden on the Commission's resources. The apparent purpose of the reparation remedy was to allow shippers to recover damages from rates which had been filed with the Commission, but which were for some reason unlawful and which had not been subject to the ordinary processes of agency review. Where those rates have gone through the proper agency channels, and where the Commission has finally acted, it would seem more efficient to allow any proper judicial remedies upon subsequent judicial review of that action."

## ORDER FOR PAYMENT OF MONEY

 Argument is made by defendants that the refund orders are orders for the payment of money and that under 49 U.S.C. § 16(2), a suit to enforce such can only be brought before a single judge and not a three-judge court. If the court comprehends this argument it is to the effect that because of the wording and nature of the ICC orders, the three-judge court lacked jurisdiction and had no business sitting on such a case and therefore this court should ignore the teachings of its decision in *Admiral-Merchants*, *supra*. To state the proposition is to destroy it. This court agrees with Judge Will in Aluminum Co. of America v. Admiral Merchants Motor Freight Inc., 337 F.Supp. 674, 686 (N. D.Ill.1972):

> "A reading of the entire opinion indicates that the three-judge court was determining that it possessed jurisdiction, not that it was determining whether suits to *enforce* refunds could properly be brought under §§ 16(2) and 205(g) of the Act. Certainly its conclusions as to its own jurisdiction do not foreclose this Court from holding that the refund orders involved are orders for the payment of money sufficient to bring these suits within the ambit of § 16(2)." [Emphasis in the original]

Solace is claimed in the language from the *Admiral-Merchants* case above quoted that the court did not commend the ICC procedure and acknowledging that the practical effect of the ruling was not before that court. The fact is that plaintiffs are now before a single judge. The three-judge court determined that the Commission had power to enter such an order as it did, recognizing that the proceeding before it was not an enforcement proceeding. Plaintiff is now here before a one-judge court seeking its enforcement relief and it should be granted.

## STATUTE OF LIMITATIONS

Defendants assert as an affirmative defense that the applicable statute of limitations, which is claimed to be one year, has expired. 49 U.S.C. § 16(3)(f) states:

> "A complaint for the enforcement of an order of the commission for the payment of money shall be filed in the district court or the State court within one year from the date of the order, and not after."

If plaintiff's right to recovery depends on Sections 16(2) as incorporated in 305(g), this would appear to be the applicable statute.

 Defendants contend that even if the final order of the Commission be deemed not to have been entered until October 27, 1969 [8] plaintiff's suits, which were filed on May 14, 1971, are barred by the one year statute of limitations. The court in Bela Seating Co. et al. v. Advance Transportation Co. et al., 344 F.Supp. 854 (N.D.Ill.1972), rejected a similar contention, and this court agrees with that determination. The central issue is whether the temporary

8. Defendants assert at page 42 of their brief that the final administrative order of the Commission was entered on April 5, 1969 and that therefore the statute of limitations began to run at that time. Defendants cite no basis for choosing that particular date. By any calculation, it would appear that the earliest conceivable date for commencing the statute of limitations period is June 5, 1969, the date when the initial order of disapproval was handed down. Whether the April 5 date is an inadvertence, typographical error, or some other reason unknown to the court is immaterial because in any event the Commission order did not become *final* until October 27, 1969. On August 29, 1969 the Commission denied the carriers' petition to vacate the June 5th order and put the burden of securing refunds upon the shippers by requiring them to proffer proof of shipment to the carriers. On October 27, 1969, the Commission denied the carriers' second petition to vacate and the order at last became final. See *Bela Seating Co. et al., infra*, at page 858. It was on this date the defendants' second petition to vacate the original order was denied and the carriers' administrative remedies were exhausted.

restraining order staying the enforcement of the ICC's refund order [9] which was issued by the court in the three-judge court case on June 19, 1970 suspended or tolled the running of the statute of limitations thereafter during its operation. Although the plaintiff conceivably could have filed suit during the pendency of the three-judge action and during the time of the carriers' appeal therefrom, this court agrees with Judge Will's conclusion in *Bela* that Congress "could not have intended the statute of limitations to run during the time that no enforceable order existed.[10] Therefore, in computing whether the one year period had expired, it is necessary to exclude the time during which the effectiveness of the refund order was stayed.

As the final Commission order is dated October 27, 1969, and as the three-judge court stayed the effectiveness of the order on June 19, 1970, it is clear that only seven months and twenty-three days elapsed prior to the issuance of the first restraining order.

After entering judgment against the carriers on February 4, 1971, which had the effect of vacating the original stay, the three-judge court, on March 24, 1971, entered a new stay order against the effectiveness of the refund order, pending completion of the defendants' appeal. The Commission's refund order, therefore, was valid and binding after judgment was entered against the carriers for a period of one month and twenty-three days (February 4, 1971 to March 24, 1971). Accordingly, at the time this latter stay was entered on March 24, 1971, the ICC refund order had been effective for a total period of nine months and thirteen days. It was during the period of this second stay that the suits at bar were filed. The Supreme Court affirmed the three-judge district court on October 12, 1971 and the stay since has expired. Plaintiff's complaints, filed on May 14, 1971, are thus well within the one year statute of limitations.

Apparently one judge in the Northern District of Illinois, as deduced from the notation made by the minute clerk without more, has held to the contrary, Container Corp. v. Admiral Merchants, (N. D.Ill. 71 C 996 May 5, 1972). The decision is not accompanied by any memorandum or explanation. This court is rather more persuaded by the reasoning contained in Judge Will's *Bela Seating* opinion *supra*.

As to plaintiff's cause of action for reparations under 49 U.S.C. § 304a(2) (as amended September 6, 1965), rather clearly the statute of limitations by the very language of that section is two years. Since the time from October 27, 1969 (or even from June 5, 1969) until May 14, 1971 when the actions were filed is less than two years, plaintiff is well within this statute.

## DUE PROCESS DEFENSES

In conclusion, defendants assert that the ICC orders are void and unenforceable because they do not have the necessary findings of fact and the Commission did not have any judicial type evidence before it; that defendants were denied a fair hearing; that the order of the ICC is confiscatory and deprives defendants of their property without due process; that defendants never made any agreement to make refunds and that given further opportunity, defendants can establish that the rates are just and reasonable. Nothing is submitted in support of any of these contentions by affidavit or otherwise. Further, the

9. The temporary restraining order issued on June 19, 1970 by the Denver court stated: "IT IS ORDERED: That the effectiveness of the [ICC refund order] be, and it is hereby, postponed indefinitely, and its operation be, and it is hereby, restrained and prohibited insofar as that Order requires or permits the payment of refunds."

10. Bela Seating Co. et al. v. Advance Transp. Co. et al., 344 F.Supp. at page 857. Cf. Missouri Pacific R. Co. v. Austin, 292 F.2d 415 (5th Cir. 1961).

three-judge court decision in *Admiral-Merchants* forecloses any such claims.

## CONCLUSION

Fundamentally, and despite all of the above, on the equities of the situation it would seem that plaintiff as a shipper ought to recover. The carriers entered into the arrangement with their eyes wide open and chose to proceed to collect unlawful increased rates in the face of the refund order. Judge Will in the first *Aluminum Company* case characterizes their conduct as "reneging". The *Admiral-Merchants* case above quoted refers to "inequitable consequences", "equitable estoppel" and a possible binding waiver. These characterizations are on target and whatever the intricacies of the web and patchwork of interstate commerce statutes, it shines through that plaintiff's cause is just and recovery should be had. Reliance can be had on the spirit of a reparations case, Middlewest Motor Freight Bureau v. United States, 433 F.2d 212 (8th Cir.1970), where recovery was had under at least analogous circumstances to the case at bar.

Both counsel opined at the hearing and in their briefs [11] that once the issue of liability had been determined by the court they would be able to stipulate as to the amount of excess charges paid in each case to the end that the cases could be submitted without an actual trial and judgment thereafter entered. Further a stipulated record perhaps should be made by identifying the parties in each case or admitting in part the allegations of the pleadings and introducing as exhibits the various orders of the ICC and perhaps other written material attached to briefs, though copies have been furnished to the court and no issue raised thereto as to their existence.

A separate order has been entered.

---

11. See Plaintiff's brief p. 12 and Defendant's brief p. 44.