**BELA SEATING COMPANY et al.,**
**Plaintiffs,**

v.

**ADVANCE TRANSPORTATION CO.**
**et al., Defendants.**

**No. 71 C 2455.**

United States District Court,
N. D. Illinois, E. D.

June 8, 1972.

Charles W. Singer, Singer & Lippman, Chicago, Ill., for plaintiffs.

Axelrod, Goodman, Steiner & Bazelon, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

The plaintiffs in this action are suing the various defendant motor carriers for refund of freight charges pursuant to orders of the Interstate Commerce Commission dated June 5, August 29, and October 27, 1969.[1] The carriers have moved to dismiss the complaint and the plaintiffs have moved for summary judgment.

The first ground asserted by the carriers in support of their motion to dismiss is that this Court lacks jurisdiction to entertain the plaintiffs' suit. The plaintiffs argue that the Court does possess jurisdiction to hear the suit under 28 U.S.C. § 1337[2] because they are attempting to enforce, pursuant to Section 16(2) of the Interstate Commerce Act, 49 U.S.C. § 16(2), the above referred to orders of the I.C.C. in which the involved carriers were ordered to make certain refunds to shippers.

This initial issue of jurisdiction is easily resolved. When a claim is alleged to arise under the Constitution or laws of the United States, the federal district court must entertain the suit except when the alleged claim appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where it is wholly insubstantial and frivolous. A claim must not be dismissed for lack of jurisdiction unless it appears, to a legal certainty, that the claim is wholly insubstantial and frivolous so far as the Constitution and the laws of the United States are concerned. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). A district court has jurisdiction when the right of a plaintiff to recover under his complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another. Wheeldin v. Wheeler, 373

---

1. Because these orders, as well as the factual and legal background behind them and this suit generally, are fully set forth in Admiral-Merchants Motor Freight, Inc., et al. v. United States, 321 F.Supp. 353 (D.Colo.1971), aff'd, 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37 (1971); Aluminum Company of America v. Admiral-Merchants Motor Freight, Inc., et al., 337 F.Supp. 674 (N.D.Ill.1971), and Aluminum Company of America v. Burlington Truck Lines, Inc., et al., 342

F.Supp. 166 (N.D.Ill.1972), there is no need to set forth herein these orders or repeat their background and the history of litigation against the shippers affected by them. See also, n. 10, infra, and accompanying text.

2. This statute grants district courts jurisdiction over civil actions to enforce any order of the Interstate Commerce Commission.

U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963). As plaintiffs' claims for enforcement of the I.C.C. orders are clearly not frivolous this Court has jurisdiction. "Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and ·not before the court has assumed jurisdiction over the controversy." Bell v. Hood, *supra*.

Although the carriers make numerous suggestions as to why plaintiffs' complaint does not state a cause of action upon which relief could be granted, their arguments narrow down to a summary of the potential actions the plaintiffs might have and the reasons why such suits are not viable in the instant proceedings. We· must, therefore, review each of these potential causes of action.

In an effort to obtain the refunds due them under the I.C.C. orders, shippers throughout the country have brought a multitude of suits against the carriers who have reneged on their agreement to refund certain moneys collected during the pendency of the Commission proceedings which preceded and led up to the involved orders. In bringing these suits, the shippers have sought relief primarily on two theories, that of common law restitution and a statutory right of suit under 49 U.S.C. § 16(2).[3] The plaintiffs

in this action assert that they are indeed claiming a right to relief under these two theories of action and disclaim a right to relief under a theory of statutory reparations.[4]

In response to the § 16(2) theory of action, the carriers assert that, even assuming the validity of our prior opinions incorporated herein which held such cause of action to be maintainable by shippers via motor carrier, the statute of limitations for such actions is one year as provided by 49 U.S.C. § 16(3) (f)[5] and that more than one year elapsed from the June 5, 1969 Commission order before the plaintiffs filed this suit on October 12, 1971. The plaintiffs contend, to the contrary, that the statute of limitations was tolled during the time that the Colorado three-judge court enjoined and stayed the effectiveness of the Commission order[6] and that they filed their suit prior to the expiration of one year's time excluding the time that the Commission order was inoperative.

■ Section 16(3) (f) of the Interstate Commerce Act sets forth a one year statute of limitations period for suits for enforcement of a Commission order for the payment of money. No doubt exists that this statute is the applicable limitations period. The shippers argue that if a Commission order for

---

3. In Aluminum Company of America v. Admiral-Merchants Motor Freight, Inc., et al., and Aluminum Company of America v. Burlington Truck Lines, Inc., et al., *supra* n. 1, this Court held that a shipper similarly situated to the plaintiffs was entitled to refunds of certain moneys pursuant to the same Commission order involved herein and that it was entitled to bring suit therefor under §§ 16(2) and 205(g) of the Interstate Commerce Act, 49 U.S.C. §§ 16(2) and 305(g). Rather than reiterating the basis for this legal conclusion, we adopt and incorporate by reference those opinions and their holdings into this opinion.

4. Suit for reparation by a shipper via motor carrier is authorized by 49 U.S.C. § 304a.

5. This statute states:
    A complaint for the enforcement of an order of the commission for the pay-

ment of money shall be filed in the district court or the State court within one year from the date of the order, and not after.

6. After the Commission entered its orders requiring the involved motor carriers to make certain refunds, the carriers affected thereby brought suit in Denver to have that order overturned. After the suit was filed, the carriers successfully moved for a temporary restraining order against the Commission order. This TRO, and a subsequent version thereof, remained in effect until the three-judge court ruled adversely to the carriers. See, Admiral-Merchants Motor Freight, Inc., et al. v. United States, *supra* n. 1. Shortly after judgment was entered, however, the court renewed its stay against the Commission order pending resolution of the appeals taken by the carriers.

the payment of money is stayed and rendered ineffective by a federal court at the instance of the common carriers ordered to make those payments, the statute of limitations should not be considered to be running at any time in which the Commission order is ineffective because, although a suit for enforcement of the order technically could be filed during this time period, no right to relief under the temporarily inoperative order could be granted by any court. We agree.

■ In response to the carriers motion in the Denver case for a temporary restraining order, the court granted the motion, entering an order on June 19, 1970, which stated:

> THIS MATTER, comes to be heard upon the Motion of the plaintiffs for a Temporary Restraining Order. Plaintiffs seek an Order of this Court restraining the effectiveness, operation and enforcement of a portion of [the relevant I.C.C. refund order].
>
> IT IS ORDERED:
> I. That the effectiveness of the [I.C.C. refund order] be, and it is hereby, postponed indefinitely, and its operation be, and it is hereby, restrained and prohibited insofar as that Order requires or permits the payment of refunds.

As soon as this Court order was entered, there no longer existed a viable, effective, and pending Commission order for the payment of the moneys involved in this litigation. Although shippers such as plaintiff presumably could have filed suit during the pendency of the Denver action and the carriers appeal from the adverse ruling therein, they certainly were not required to do so because no relief could have been granted to them. As a matter of fact, the few shippers who did file suit of whom the Court is aware were compelled to have all action on their cases stayed (generally at the request of the carriers) pending final resolution of the Denver proceedings and the appeal therefrom. We doubt that Congress intended the statute of limitations to run during the time that no enforceable order existed.[7] Accordingly, we construe § 16(3) (f) of Title 49 of the United States Code to require a party to bring suit for the enforcement of a Commission order for the payment of money within one year's time from the date of that order excluding any time in which the effectiveness of that order has been stayed at the request of the parties ordered to make the payment.

The next issue which we must consider is whether the plaintiffs have met the statute of limitations as above defined. The carriers assert that more than one year elapsed from the Commission order of June 5, 1969 before the Denver court first stayed its effectiveness, that the Denver court's stay expired on January 14, 1971, and that the plaintiffs did not file suit until October 21, 1971. The errors and omissions from this argument are three-fold and the Court has been compelled to secure from the Clerk of the Court for the United States District Court for the District of Colorado a copy of the docket sheet of the Denver case to determine for ourselves the exact date of that court's rulings.

The first error of the carriers is their suggestion that the final Commission order was the order of June 5, 1969. In the order of that date, the Commission first required the carriers to make the refunds of the disapproved increased tariffs which had been collected by the carriers.[8] Subsequent to this order, however, the carriers petitioned to vacate the June 5th order. This petition was denied by the Commission on August 29, 1969 and the Commission again affirmatively ordered the refunds to be made by the carriers.[9] On October 9,

---

7. Cf., Missouri Pacific R. Co. v. Austin, 292 F.2d 415 (5th Cir. 1961).

8. See, Aluminum Company of America v. Admiral-Merchants Motor Freight, Inc., et al., supra n. 1, 337 F.Supp. at 677, n. 2.

9. See, Aluminum Company of America v. Admiral-Merchants Motor Freight, Inc., et al., supra n. 1, 337 F.Supp. at 677, n. 3.

1969, the carriers again petitioned the Commission to vacate its June 5th and August 29th orders, alleging new grounds in support of their claims. Reaching the merits, the Commission denied the carriers' new petition to vacate on October 27, 1969.[10] It is this Commission order, which affirmed the order of August 29, 1969, which in turn had modified and affirmed the order of June 5, 1969, which is the final order of the Commission involved in this litigation because it was not until that October date, after the carriers had exhausted the administrative avenues open to them for contesting the order, that they ultimately became liable for the moneys ordered refunded. Accordingly, any computation of the one year statute of limitations provided for by 49 U.S.C. § 16(3) (f) must be made as of October 27, 1969.[11]

As the final Commission order is dated October 27, 1969, and as the Denver court stayed the effectiveness of that order on June 19, 1970, it is clear that only seven months and twenty-three days elapsed prior to that first restraining order which temporarily nullified the Commission's refund requirement.

The carrier's second error results from their affirmative omission of the fact that, after entering judgment for the defendants, the Denver court, on the carriers' insistence, again renewed the injunction against the Commission refund order. After entering judgment against the carriers on February 4, 1971, which had the effect of vacating the original injunction, the Denver court, on March 24, 1971, entered a new stay against the effectiveness of the Commission refund order.[12] This stay order, by its terms, further postponed any effect of the Commission refund order until all appellate proceedings in the Supreme Court of the United States and/or the Tenth Circuit should be terminated. We conclude, therefore, that during the time this stay was effective, the Commission refund order was again totally, although temporarily, nullified as it had been by the earlier TRO and "Interlocutory Injunction" and was not an effective order upon which the statute of limitations could run.[13]

---

10. In this order, the Commission also denied the motion of several representatives of shippers to vacate that portion of the August 29th order which put the burden of securing the refunds upon the shippers by requiring them to proffer proof of shipment to the carriers.

11. Cf., Thomson Phosphate Company v. Atlantic Coast Line R. Co., 434 F.2d 180 (2d Cir. 1970), cert. denied, Atlantic Coast Line R. Co. v. United States, 402 U.S. 975, 91 S.Ct. 1668, 29 L.Ed.2d 139 (1971).

12. The Court's stay order provided in part:
   1. That the opinion and order of this Court and the judgment entered thereon on February 4, 1971, be and they hereby are stayed and postponed pending appeal of the within matter.
   2. That the operation and effectiveness of that portion of the Interstate Commerce Commission's Order heretofore entered in that Commission's Docket No. 34971, Increased Rates and Charges From, To and Between Middlewest Territory, 335 I.C.C. 397, on June 5, 1969, as supplemented by that Commission's Order of August 29, 1969 upon reconsidera-

tion, which requires or authorizes the payment of refunds by the Plaintiffs, be, and it hereby is stayed and its operation postponed pending the completion of appellate proceedings in the Supreme Court of the United States or in the Court of Appeals for the Tenth Circuit, or both.

13. We agree with the suggestion of the Denver court which they included in their March 24, 1971 stay order that the stay did not preclude the filing of suits by shippers against carriers during the pendency of the appeals. The court, however, did not rule upon the issue of whether the stay itself had the effect of tolling the statute of limitations. As a matter of fact, the court made quite clear that they were uncertain as to what statute of limitations would ultimately be held applicable at all. The court stated in this regard:
   Nothing herein shall be construed as preventing members of the public or of the Government from initiating litigation to toll any statute of limitations which might ultimately be found applicable.

The Commission refund order, therefore, was valid and binding after judgment was entered against the carriers for a period of one month and twenty days (from February 4, 1971 until the order was again suspended on March 24, 1971). Accordingly, at the time this latter stay was entered on March 24, 1971, the Commission refund order had been effective for a total period of nine months and thirteen days (seven months and twenty-three days plus one month and twenty days). This stay ended by its own terms, and the statute of limitations as set forth by § 16(3) (f) began running again, on December 27, 1971, when the United States Court of Appeals for the Tenth Circuit entered an order granting the carriers' motion to dismiss their separate appeal from the Denver court, the Supreme Court having affirmed the district court on October 12, 1971. Accordingly, the statute of limitations for enforcement suits on the June 5, August 29, and October 27, 1969 Commission orders did not terminate until approximately two months and seventeen days after the expiration on December 27, 1971, of the Denver court's final stay of the effectiveness of the Commission refund order. As the plaintiffs herein filed their suit on October 12, 1971 (as opposed to the carriers' contention that it was filed on October 21, 1971), they clearly fell within the one year statute of limitations as set forth by § 16(3) (f) of the Interstate Commerce Act and that statute is no bar to their suit.

■ In addition to alleging their valid § 16(2) claim against the carriers, the plaintiffs also allege a cause of action based upon a theory of restitution. As we stated in the first *Aluminum Company* case, the issue of whether a carrier would be entitled to a refund based upon a common law theory of restitution is a most difficult issue involving the subtle implications of T. I. M. E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959) upon 49 U.S.C. § 316(j), which states that the Interstate Commerce Act does not extinguish any remedy or right of action not inconsistent thereto.[14] However, as was also the situation in the first *Aluminum Company* case, the cause of action based upon a theory of restitution would arise outside of the Interstate Commerce Act and would apparently be a standard diversity action and the Court would possess no jurisdiction over such a common law cause of action because of both lack of diversity between all plaintiffs and all defendants and lack of the necessary jurisdictional amount in controversy between the parties. Furthermore, neither diversity of citizenship nor jurisdictional amount are even pleaded in the plaintiffs' complaint.

In summary, the defendant motor carriers' motion to dismiss the complaint must be denied because we conclude that the Court does possess jurisdiction to hear the plaintiffs' claim under 49 U.S.C. § 16(2), that the § 16(2) claim is a claim upon which relief can be granted, and that the statute of limitations of § 16(3) (f) is no bar to this suit. The motion to dismiss is granted, however, insofar as the plaintiffs attempt to state a cause of action for common law restitution.

■ Although it is clear that the complaint states a cause of action, we nevertheless may not grant plaintiffs' motion for summary judgment at this time. Not only is there no evidence or record of any sort in this proceeding to date, but the complaint is not even verified and the essential affidavits are wholly missing. Because the defendants have only filed a motion to dismiss, they have not filed an answer in this cause and the Court has no way of knowing what facts alleged in the complaint will be admitted or denied. Thus, there is no proof herein that any or all of the de-

---

14. At least one court has ruled that *T.I.M.E.* precludes any right to common law restitution based upon the June 5, August 29 and October 27, 1969 I.C.C. orders. *See*, United States of America v. Associated Transport, Inc., et al., Civ. Action No. 2003–71 (D.D.C. May 12, 1972).

fendants are members of the Middlewest Motor Freight Bureau, Inc., and that any of the plaintiffs shipped goods over any of the defendant carriers. The plaintiffs have not even technically referred to or incorporated into their complaint the August 29 and October 27, 1969 orders of the Commission. Accordingly, the plaintiffs' motion for summary judgment must be denied at this time.

An appropriate order will enter denying the defendants' motion to dismiss the complaint and denying the plaintiffs' motion for summary judgment.