The **PROCTOR AND GAMBLE COM-PANY et al., Plaintiffs,**

v.

**BYERS TRANSPORTATION COM-PANY, INC., et al., Defendants.**

**No. 18829–4.**

United States District Court,
W. D. Missouri, W. D.

Feb. 22, 1973.

Don M. Jackson, Jackson & Sherman, Kansas City, Mo., Smith Tyler, Jr., Cincinnati, Ohio, for plaintiffs.

Donald J. Quinn, Kansas City, Mo., Arthur R. Hauver, Denver, Colo., for defendants.

## FINDINGS, OPINION, AND JUDGMENT

ELMO B. HUNTER, District Judge.

On November 12, 1970, a complaint was filed in the above-entitled action. Basically, plaintiffs are seeking enforcement, through a monetary judgment, of certain orders of the Interstate Commerce Commission. Subsequent to the filing of the complaint three carrier defendants were dismissed by the Court upon application of the plaintiffs. Trial on the merits against the three remaining defendants, Ideal Truck Lines, Inc., Darling Transfer, Inc., and Solid Service System, was held before the Court.

Sometime after the filing of the complaint, the defendants moved to stay all proceedings in the action, including the filing of an answer, pending a final determination of Admiral-Merchants Motor Freight, Inc., et al. v. United States of America and the Interstate Commerce Commission.[1] This action was before a three-judge court in Colorado and involved the validity of the refund portion of the order of the Interstate Commerce Commission here in question. Pursuant to the interlocutory injunction issued by that court restraining the enforcement of the Commission's order in issue pending a determination on the merits, and based upon representations that the outcome of the *Admiral-Merchants* case would be or should be determinative of the issues involved in this action, this Court issued an order staying further proceedings. However, after the three-judge court issued its decision, affirmed by the United States Supreme Court,[2] dissolving the injunction and upholding the order, this Court held a conference at which the defendants contended the *Admiral-Merchants'* decision was not controlling.

In this vein the action proceeded until it has now been fully presented.

## JURISDICTION AND VENUE

Jurisdiction in this action is based primarily on Title 28, § 1336 United States Code. Section 1336(a) reads:

Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in part, any order of the Interstate Commerce Commission.

As will be discussed more fully, infra, it can not be persuasively argued that the plaintiffs' cause of action is not essentially one seeking the enforcement of an order of the Interstate Commerce Commission. Accordingly, this Court

1. 321 F.Supp. 353 (D.Colo.1971), aff'd 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37, rehearing den. 404 U.S. 987, 92 S.Ct. 443, 30 L.Ed.2d 371 (1971).

2. The decision was affirmed without opinion. See, Note 1.

has jurisdiction to rule on the merits of the action.[3]

■ There has been no attack on the propriety of venue in this judicial district, thereby obviating the necessity of the Court to affirmatively rule on this aspect of the action, other than by noting that any arguable defect in venue has been waived by the failure to object or otherwise timely and properly raise this issue. Hoiness v. United States, 335 U.S. 297, 69 S.Ct. 70, 93 L.Ed. 16 (1948), Anno.: 93 L.Ed. 21; Erie-Lackawanna R. Co. v. United States, 279 F. Supp. 316 (S.D.N.Y.1967), remanded on other grounds, 389 U.S. 486, 88 S.Ct. 602, 19 L.Ed.2d 723 (1968); Rhodes v. United States, 218 F.Supp. 382 (W.D. Pa.1963).[4]

## REGULATION OF RATES

■ The statutory scheme applicable in all proposed increases in rates by motor carriers is set forth in the Federal Motor Carrier Act, Part II of the Interstate Commerce Act, 49 U.S.C. § 301 et seq. Specifically, § 217 of the Act (49 U.S.C. § 317) states that every common carrier by motor carrier must file with the Commission tariffs showing all of the respective rates and charges for transportation. The Commission is authorized to reject any tariff not in consonance with the Act and the applicable regulations, in which case the tariff shall be void and its use unlawful. Middlewest Motor Freight Bureau v. United States, 433 F.2d 212 (8th Cir. 1970), cert. denied, 402 U.S. 999, 91 S.Ct. 2169, 29 L.Ed.2d 165 (1971). Additionally, no change may be made in any rate except following notice filed with the Commission reflecting the proposed change, in which event the change would not take effect for 30 days unless otherwise ordered by the Commission. However, § 216(g) of the Act, 49 U.S.C. § 316(g) provides:

Whenever there shall be filed with the Commission any schedule stating a new * * * rate . . . the Commission is authorized and empowered upon complaint of any interested party or upon its own initiative at once . . . upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate . . . and pending such hearing and the decision thereon the Commission, by filing with such schedule and delivering to the carrier or carriers affected thereby a statement in writing of its reasons for such suspension, may from time to time suspend the operation of such schedule and defer the use of such rate . . . but not for a longer period than seven months beyond the time when it would otherwise go into effect; and after hearing, whether completed before or after the rate . . . goes into effect,

3. 28 U.S.C. § 1337 is also alleged as conferring jurisdiction. Because of jurisdiction under § 1336 discussion of this allegation is unnecessary.

There is no assertion of diversity jurisdiction under 28 U.S.C. § 1332, and it affirmatively appears that the matter in controversy here does not exceed $10,000.

4. 28 U.S.C. § 1398(a) reads in pertinent part:

Except as otherwise provided by law, any civil action to enforce . . . an order of the Interstate Commerce Commission shall be brought only in the judicial district wherein is the residence or principal office of any of the parties bringing such action.

49 U.S.C. § 16(2) has a separate venue provision:

If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in the district court of the United States for the district in which he resides or in which is · located the principal operating office of the carrier, or through which the road of the carrier runs . . . a complaint setting forth briefly the causes for which he claims damages, and the order of the commission in the premises.

See, Montgomery Ward and Co. v. Anderson Motor Service 339 F.Supp. 713 (W.D.Mo.1971); 28 U.S.C. § 1406(b).

the Commission may make such order with reference thereto as would be proper in a proceeding instituted after it had become effective. If the proceeding has not been concluded and an order made within the period of suspension, the proposed change of rate . . . shall go into effect at the end of such period . . . . At any hearing involving a change in a rate . . . the burden of proof shall be upon the carrier to show that the proposed changed rate . . . is just and reasonable.

More succinctly stated, the statutory provisions authorize a carrier, upon the proper filing, to fix its own rates at any level it sees fit in which event the proposed rates normally become effective 30 days after filing. However, an interested party may file a complaint concerning the increase, or the Commission may decide on its own motion to hold a hearing on the lawfulness of such rate. If the Commission determines to make inquiry into the lawfulness of the rate, it may either: (a) suspend the exaction of the increase, up to seven months, pending the outcome of the hearing, or (b) refrain from suspending the increased rate, in which case the increase would become effective as if no complaint or inquiry was made, pending the outcome of the Commission's decision after the hearing.[5] See, Middlewest Motor Freight Bureau v. United States, supra; Overnite Transportation Company v. United States, 266 F.Supp. 88 (E.D.Va. 1967).

## HISTORY OF THE ORDER[6]

The facts of this case are relatively undisputed, and from all the evidence appear as follows:

The Middlewest Motor Freight Bureau (Bureau) acts as a rate publishing agent for the defendants and other regular route general commodity carriers of property in interstate commerce in a limited geographical area. The Bureau assists in preparing consolidated evidence for rate changes pursuant to the Interstate Commerce Commission's rules and regulations. The defendants are common carriers by motor vehicle subject to the provisions of the Interstate Commerce Act, 49 U.S.C. § 1 et seq. The defendants are all participating carriers in tariffs published by the Bureau and were parties to the Interstate Commerce Commission's order hereinafter described.

As a result of schedules filed 30 days earlier with the Commission and which became effective on April 1, 1968, the defendants participated in tariffs published by the Bureau establishing increased class and commodity truckload and less than truckload rates for services in the Middlewest Territory, in an amount of approximately five per cent for shipments of less than 5000 pounds and three per cent for those over 5000 pounds. The pronounced purpose of the increase was to offset a contracted increase in the wage of the respective labor force. Upon protests by various parties, both private and public,[7] the Interstate Commerce Commission, by order of March 29, 1968, instituted an investi-

---

5. If alternative (b) is followed by the Commission, and the rates are subsequently found unlawful, the problem develops concerning the shippers right of recovery for the allegedly unreasonable past rates exacted. See, T.I.M.E. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959). Besides recourse for reparations, 49 U.S.C. § 304a, a shipper may have a cause of action under 49 U.S.C. § 16(2) as well as under the principles of restitution. These various avenues for

relief will be dealt with more specifically later in this opinion.

6. See, Increased Rates and Charges, From, To and Between Middlewest Territory, 335 I.C.C. 142 (No. 34971, June 5, 1969).

7. The only protestants who subsequently actively participated in the hearing were the United States Department of Transportation and the General Services Administration.

gation, without suspension, into the lawfulness of the proposed schedules.

By order of April 3, 1968, the proceeding was set for hearing on May 20, 1968. The order bypassed the procedure before an examiner and provided that the proceeding would not be the subject of an examiner's recommended report and order because the circumstances required an expedited decision. This order also elaborated the specific information and supporting data the Commission desired from the carriers by May 20, 1968, for use by the Commission in making its determination into the reasonableness of the increases. The order detailed:

> That all of the required data specified in this order shall be based upon and reflect at least the 1967 annual reporting period.

Additionally, the order set forth the type of evidence desired from the protestants, Department of Transportation and the General Services Administration, supporting their protest.

It is in this posture that the order complained of, and here sought to be enforced, was subsequently issued. More particularly, on April 12, 1968, the General Services Administration joined with the Department of Transportation in a request for a 90 day extension of time in which to submit the desired evidence, together with a commensurate postponement of the hearing date. In support of the requested extensions of time it was stated:

> Much of the evidence requested will require the collection and intensive analysis of 1967 motor carrier annual reports to the Commission, due March 31, 1968.

By letter dated April 22, 1968, directed to the Interstate Commerce Commission concerning the hearing date, counsel for the Bureau sought a like 90-day postponement for "the reason . . . that it is a physical impossibility for re-spondents to compile the required data within the time allowed by the order . . . . The time required to process the 1967 traffic data is the factor which makes compliance with the dates set in the order impossible, and makes the requested ninety day postponement imperative." The Bureau also sought a change in the hearing location from Washington, D.C., to Kansas City, Missouri.

Subsequently, the Commission held an informal prehearing conference on the subject of these requests for additional time and necessary postponement of the hearing date.

On April 25, 1968, the Commission granted the requested extension of time to comport with the Bureau's proposed schedule continuing the hearing to August 19, 1968, "conditioned upon respondents' [motor carriers] compliance with the refund provision ordered below", which read:

> *And it is further ordered,*
>
> That respondents be, and, they are hereby ordered to make refunds to the shippers on any shipments moving after May 20, 1968, to the extent that the increases or any portion thereof under investigation herein are not approved by the Commission.

On May 3, 1968, the Bureau prepared and filed a petition for reconsideration of the refund language contained in the order. However, after filing the petition it came to the attention of the attorneys for the Bureau that in different proceedings before the Commission there were two other rate bureaus in the same situation. A similar refund order had been issued against those two bureaus on their request for a continuance. They had also filed a petition for reconsideration. The Commission in those proceedings granted the petition for reconsideration and vacated the refund order, but also reinstated the original date for hearings and other procedures.[8] With this knowledge counsel then con-

8. See, Increased Rates and Charges, Pacific Inland Territory, 332 I.C.C. 845 and General Increase, Middle Atlantic and New England, 332 I.C.C. 820.

ferred with the Middlewest Motor Freight Bureau and "concluded we would get the same treatment that the other bureaus had gotten if we left the petition in. We felt we could not meet the original hearing dates with the type of evidence the Commission called for, and concluded we should withdraw the petition." Thereafter the petition for reconsideration was withdrawn by the Bureau, leaving the order of April 25, 1968, remaining in effect.

A hearing on the merits was held on August 19, 1968, as set in the order of April 25, 1968, and on June 5, 1969, the report and order of the Commission in the proceeding was issued.[9] After detailing the basis for the decision, the Commission found "that the proposed increases have not been shown to be just and reasonable." The Commission directed the carriers to cancel the schedule reflecting the unwarranted increase as provided by law, and further ordered:

> That in accordance with the order entered herein on April 25, 1968, the respondents be, and they are hereby, required to refund to shippers the charges on shipments moving after May 20, 1968, to the extent that such charges included the increases herein found not shown to be just and reasonable.

The carriers thereafter filed a petition to vacate that portion of the order of June 5, 1969, which required payment of refunds, and asked for reconsideration of the refund order, or in the alternative, the reopening of the proceeding for further hearing. During the pendency of this request, the disputed increases were cancelled on statutory notice effective August 31, 1969. However, simultaneously, the carriers filed new schedules reflecting higher increases to become effective September 1, 1969. Upon inquiry, the Commission, through the Board of Suspension, declined to sus-

pend or investigate the new scheduled increases.[10] Various protestants appealed this decision to the entire Commission which on August 29, 1969, entered an order declining to suspend or investigate the increases and, at the same time, denying the carriers' petition to reconsider and vacate the refund order. The Commission further ordered:

> . . . the respondents will hereinafter in accordance with the said decision of June 5, 1969, make refunds to shippers presenting their claims to the carriers supported by paid freight bills or other appropriate evidence.

On October 27, 1969, the Commission had before it and considered a petition filed October 9, 1969, by the Bureau for reconsideration of the June 5, 1969, decision as affirmed on August 29, 1969. The Commission denied the carriers' petition, not on the grounds that it was merely a successive request but on the merits, and noted:

> . . . the order of August 29, 1969, did not change the liability for making refunds, previously determined, but appropriately placed the burden for supporting claims for refunds upon the shippers who paid the charges.

## PRIOR LITIGATION CONCERNING THE JUNE 5, 1969 ORDER

On January 26, 1970, various carriers filed a complaint in the United States District Court for the District of Colorado entitled Admiral-Merchants Motor Freight, Inc., et al. v. United States of America and Interstate Commerce Commission.[11] The action sought review of that portion of the June 5, 1969 order requiring refund, with the requested relief being the setting aside and enjoining of the provision as beyond the statutory authority and jurisdiction of the Commission. On June 19, 1970,

9. Increased Rates and Charges, From, To and Between Middlewest Territory, 335 I.C.C. 142 (No. 34971, June 5, 1969).

10. See, 49 U.S.C. § 316(g).

11. Now reported, 321 F.Supp. 353 (D.Colo. 1971), aff'd without opinion 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37, reh. den. 404 U.S. 987, 92 S.Ct. 443, 30 L.Ed.2d 371 (1971).

after a finding that "unless the effectiveness, operation and enforcement of the subject Order is temporarily restrained by this Court, the plaintiffs will be immediately and irreparably damaged", United States District Court Judge William E. Doyle issued a temporary restraining order.[12] On November 6, 1970, the three-judge court empaneled to hear the action ordered the temporary injunction to remain in full force and effect as an interlocutory injunction.

On January 14, 1971, the three-judge court refused to annul the Commission's refund order and dismissed the carriers' complaint. Judgment was entered on February 4, 1971, vacating the original injunction. However, on May 24, 1971, the Court stayed the effect of the judgment pending direct appeal to the United States Supreme Court with a provision that "nothing herein shall be construed as preventing members of the public or of the Government from initiating litigation to toll any statute of limitation which might ultimately be found applicable."

The opinion in *Admiral-Merchants*, after a brief recitation as to the facts and jurisdiction, focused on the issue of whether the conditional rate refund order of June 5, 1969, was invalid and subject to a judgment annuling the same. The Court in dismissing the action relied on three separate and distinct grounds;

(1) the imposition of a conditional refund order tacitly or impliedly accepted by the carriers through the withdrawal of their objection to the order, as a prerequisite to the granting of an extension of time requested by the carriers, was purely procedural and within the authority of the Commission,

(2) the carriers, under the doctrine of equitable estoppel, were foreclosed from attacking the refund order after the withdrawal of their jurisdictional objection to the condition because of the Commission's reliance on this act, and

(3) the affirmative withdrawal of any objection by the carriers to the order amounted to a binding waiver on their part.

The Court concluded:

We are unable in good conscience, in view of the circumstances presented, to annul the order of the Commission. The Commission was acting in good faith in granting the extension, and the carriers were at the time agreeable to acceptance of the benefits of such an extension order. Their present posture appears to us to be grossly inequitable and not deserving of court intervention. While we do not commend the procedure as one which should be or could be practiced, we do hold that the peculiar facts of this case, arising as they did, are such as to not justify the granting of the relief requested, namely annulment of the Commission's order and approval of the carriers' conduct.

Since the *Admiral-Merchants* case was decided and affirmed without opinion by the Supreme Court,[13] various decisions have been forthcoming concerning the above-discussed orders of the Interstate

12. The pertinent part of the order stated:
 1. That the effectiveness of the Order of Defendant Interstate Commerce Commission entered in its Docket No. 34971, Increased Rates and Charges, From, To, and Between Middlewest Territory, be, and it is hereby postponed indefinitely, and its operation be, and it is hereby, restrained and prohibited insofar as that Order requires or permits the payment of refunds.
 2. That Defendants United States of America and Interstate Commerce Commission, their officers, agents, servants, employees and attorneys be, and they hereby are, restrained and prohibited from enforcing or attempting to enforce, the Order and requirement of the Defendant Interstate Commerce Commission entered in its Docket No. 34971

 . . . .

 3. That this Order shall be effective immediately and shall remain in effect until the hearing on the application for interlocutory injunction in this matter.

13. 404 U.S. 802, 92 S.Ct. 51, 30 L.Ed.2d 37 (1971).

Commerce Commission.[14] The Court will refer to these decisions from time to time as they appear relevant and enlightening.

### THE RES JUDICATA QUESTION

The defendants in this action raise, among others, the defense that the refund portion of the June 5, 1969 order of the Commission is invalid. This assertion is premised primarily on two separate arguments: (1) The Commission did not have the power or authority to issue the disputed order, and (2) The order requiring refund is confiscatory. Further, defendants contend that the portion of the June 5, 1969 order determining that the Bureau had failed to carry its burden is unsupported by substantial evidence.

The import of the *Admiral-Merchants'* decision immediately raises the doctrine of res judicata and the applicability of that doctrine to the attacks here made on the validity of the Interstate Commerce Commission's order.[15]

It is not disputed that the various orders of the Commission as earlier set out apply to and affect the defendants named in this action. The preliminary determination in view of the res judicata question is whether the defendants may successfully attack in this proceeding either (1) the validity of the refund portion of the Interstate Commerce Commission's order of June 5, 1969, as implemented by the Commission, or (2) the finding of the Commission on June 5, 1969, that the defendants failed to carry their burden of showing the increase just and reasonable. For the reasons enumerated below, the Court finds that the orders of the Commission were valid in all respects here challenged, and therefore, enforceable through the proper procedures.

### I. *The Refund Order*

■■ The Court finds that the defendants are precluded from attacking the validity of the refund order of the Commission under the principle of res judicata and its related concepts. It is well settled that:

> Res judicata . . . makes a final, valid judgment conclusive on the parties, and those in privity with them, as to all matters, fact and law, that were or should have been adjudicated in the proceeding.[16]

It is established that the Bureau represented before the Interstate Commerce Commission all of the defendants named herein. It is not clear whether all of the defendants in this action were plaintiffs in the Colorado action. In paragraph seven of the joint answer it is admitted that "the defendants herein together with other carriers similarly situated, filed an action in the United States District Court for the District of Colorado, entitled Admiral-Merchants Motor

---

14. Aluminum Company of America v. Admiral-Merchants Motor Freight, Inc., 337 F.Supp. 674 (N.D.Ill.1972) and accompanying unpublished Memorandum Opinions No. 70 C 1189, 1190, 1197, Nov. 30, 1971, and Jan. 28, 1972; Aluminum Company of America v. Burlington Truck Lines, Inc., 342 F.Supp. 166 (N.D.Ill. 1972) and accompanying unpublished Memorandum Opinion, No. 70 C 1191–1195, 1198–1200 (May 3, 1972); Bela Seating Co. v. Advance Transportation Co., 344 F.Supp. 854 (N.D.Ill.1972); Land O'Lakes, Inc. v. United-Buckingham Freight Lines, Inc., 351 F.Supp. 102 (D.Minn.1972); S. S. Kresge Co. v. A & B Transfer, Inc., unreported opinion, No. 34887 (E.D.Mich. June 30, 1972); Appleton Electric Co. v. Advance-United Expressways, unreported opinion, No. 70 C 1427 (N.D.Ill. Feb. 25, 1972); American Home Products Corp. v. A & B Transfer, Inc., unreported opinion, No. 70 C 1562, 71 C 1236 (N.D.Ill. Sept. 29, 1972); and Container Corp. v. Admiral-Merchants, unreported opinion, No. 71 C 996 (N.D.Ill. May 30, 1972).

15. Unless this Court finds that the order here sought to be enforced by the plaintiffs and attacked by the defendants is valid, whether by way of res judicata or on the merits, the question of recovery need not be reached.

16. 1B Moore's Federal Practice, ¶ 0.405, p. 624 (1965).

Freight, Inc., et al. v. United States of America and Interstate Commerce Commission." The Court deems this admission sufficient to support the view that all of the defendants are, under the instant circumstances, bound by the Colorado decision. However, the defendants now assert that Solid Service System was not a party to the *Admiral-Merchants* litigation.

In view of the admission contained in the answer as well as the evidence the Court affirmatively finds that all of the defendants in this action were either parties or privies to the Colorado action and are bound by its results.

■ Approximately sixty carriers were involved as plaintiffs in the *Admiral-Merchants'* decision. The same attorneys representing the defendants here, other than local counsel, represented the carriers in Colorado. Two of the five attorneys representing the Bureau before the Interstate Commerce Commission presented the case for the named carriers before the Colorado Court including the executive vice-president and chief administrative officer of the Middlewest Motor Freight Bureau. Because of the nature of orders from the Interstate Commerce Commission, that is through their potential effect on numerous parties, the doctrine of res judicata is applicable in certain instances extending the effect of judicial determination of those orders to those carriers represented before the Commission, but not a named party in the action for judicial review. The rationale for this view is clearly seen in the instant case. The Bureau represents numerous individual carriers throughout a limited geographical area in proceedings before the Interstate Commerce Commission. More particularly, it is upon the Bureau to prove before the Commission that an increase *in rates is just and reasonable* as set out in the statutory framework. If the Commission determines the rates were

not shown to be just and reasonable and this decision was administratively exhausted, the persons aggrieved may seek judicial review. It would seem most expedient for the Bureau to continue its representation of the numerous carriers on review. To presume that each individual carrier has a separate right of review of the same Commission order would cause a proliferation of actions, excessive waste of judicial time, and potentially inconsistent decisions. This is especially true where, as here, the validity of the order has been determined on the merits by a three-judge court and affirmed by the Supreme Court upon application by a representative number of those carriers affected.[17] The question here presented is whether after 60 carriers availed themselves of the right to review of the Interstate Commerce Commission's order of June 5, 1969 before an appropriate three-judge court, and the United States Supreme Court, can a different carrier interpose as a defense in a separate action for enforcement of the identical order, the invalidity of that order.

■ The ability to intervene pursuant to Rule 24, Federal Rules of Civil Procedure, is not in and of itself sufficient to invoke res judicata in this action. However, a person not a party to the litigation will still be bound by the determination if he is privy to the litigating party. Smith v. United States, 369 F.2d 49 (8th Cir. 1966); Industrial Credit Co. v. Berg, 388 F.2d 835 (8th Cir. 1968); Hudson v. American Surety Company of New York, 377 F.2d 698 (8th Cir. 1967). Therefore, in light of the considerations enunciated above, and because of the facts surrounding the applicability of the Commission's order to numerous carriers as members of the Bureau, the joint interest of the carriers in the Colorado decision, and the overlap of representation of the carriers in the *Admiral-Merchants* case with that of the

---

17. Further, it is noteworthy that representations were made by at least one of the original defendants that the pending

Admiral-Merchants decision would be dispositive of this action.

proceedings before the Interstate Commerce Commission and the instant action, this Court finds that the defendants herein were privy to the plaintiff-carriers involved in the Colorado proceeding and therefore bound by that determination as affirmed by the Supreme Court. Accordingly, the defendants are bound by the determination in *Admiral-Merchants* concerning the contention that the refund portion of the June 5, 1969, order was invalid, confiscatory or otherwise unlawful or void. Thus, in accordance with the decision in *Admiral-Merchants*, these contentions raised in this action are deemed to be without merit.[18]

## II. *The Commission's Finding Concerning Reasonableness of the Rates*

The defendants attack the June 5, 1969, finding by the Commission that the carriers (through the Bureau) failed to carry their burden of showing that the increase was just and reasonable. It is noteworthy that the defendants' answer states, "the question of reasonableness of rates is subject to the exclusive and primary jurisdiction of the Interstate Commerce Commission." Even so, the Court will discuss their contention that the rates were just and reasonable.

■ Initially, it is clear that the principles of res judicata previously discussed precludes the defendants from raising the contention that the Commission's finding that the Bureau had failed to carry its burden of proof was erroneous. This issue could have been fully raised and litigated in the *Admiral Merchants'* action initiated by various carriers to enjoin the enforcement of the refund portion of the same order. As Judge Will noted in Aluminum Co. of America v. Burlington Truck Lines, Inc., 342 F.Supp. 166 (N.D.Ill.1972):

> . . . the carriers nevertheless cannot now urge as invalid an aspect of the Commission order different than that previously urged as invalid before the Denver Court. Having once brought a review proceeding under § 17(9) of the Act challenging a portion of a Commission order on only one ground, a carrier must be deemed to have waived any objection to any other portion of the order not so challenged and cannot be allowed to controvert the remainder on a piece-meal basis. Accordingly, we conclude that the carriers herein have waived their right to contest the validity of the ICC order as it relates to the Commission's findings that the carriers had not met their burden of proving the justness and reasonableness of the proposed tariff increases . . . .[19]

---

18. Under the prevailing theory, however, before the defendants could be bound by res judicata here, there must be a finding that the plaintiffs herein were likewise parties to or privy to the Colorado litigation. The discussion as to the Interstate Commerce Commission procedures is relevant in this determination also. Although only the United States and the Interstate Commerce Commission were party-defendants in the Colorado decision, since it was the validity of the Commission order which was being attacked, with the shippers as merely third party beneficiaries of this order, the shippers must be and are bound by the determination in Admiral-Merchants. If each shipper could seek to enforce an order previously judicially determined to be valid or invalid, the same problems as mentioned relating to the carriers would arise. Besides the practicalities of this somewhat liberal view of res judicata as it applies to the judicial .

determination of the validity of orders of the Interstate Commerce Commission, the facts in this case warrant the application of these principles.

In addition to this finding, in applying stare decisis to what appears to be here the identical factual and legal challenge to the Commission's order as was before the three-judge court, the Court here adopts the *Admiral-Merchants* finding and rationale and affirmatively rules that the refund order here was valid. See, S.S. Kresge and Land O'Lakes, supra, note 14.

19. This waiver would still be applied whether or not the attacked order is deemed to be for the payment of money. Since the three-judge court properly had jurisdiction over one aspect of the single order of the Commission, any other attacks on that order should have been made before that court.

This is essentially the same holding as in Land O'Lakes, Inc. v. United-Buckingham Freight Lines, Inc., 351 F.Supp. 102 (D.Minn.1972), and S. S. Kresge Company v. A and B Transfer, Inc., (No. 34887, E.D.Mich. June 30, 1972).[20]

In addition to this Court's ruling on the res judicata issue, in light of the evidence adduced at trial the Court finds against the defendants on their contention that there was not substantial evidence to support the Commission's finding that defendants' evidence failed to carry their burden of proof that the proposed rates were shown to be just and reasonable.

If the Court were to assume that plaintiffs' relief is here predicated solely on 49 U.S.C. § 16(2), it is the general rule that the carrier can assert as a defense to such an action error in the Commission's finding of unreasonableness.[21] Interstate Commerce Commission v. Atlantic Coast Line R. Co., 383 U.S. 576, 86 S.Ct. 1000, 16 L.Ed.2d 109 (1966). The issue of reasonableness of rates calls for the exercise of the Commission's primary jurisdiction. Great Northern Railway Co. v. Merchants Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922). Once the Commission has made a final determination, as was done in this instance, the parties in interest are entitled to judicial review of the order to ascertain whether it was entered arbitrarily or without substantial supporting evidence. United States v. Interstate Commerce Commission, 91 U.S.App.D.C. 178, 198 F.2d 958 (1952), cert. den. 344 U.S. 893, 73 S.Ct. 212, 97 L.Ed. 691; Illinois Central R. Co. v. Norfolk and Western R. Co., 385 U.S. 57, 87 S.Ct. 255, 17 L.Ed. 2d 162 (1966); Administrative Procedure Act, 5 U.S.C. § 706. If the reviewing court finds that the Commission's action, in deciding that the carriers had not met their burden of proving the proposed increases just and reasonable, was not supported by substantial evidence, then the agency's order must be set aside. Consolo v. Federal Maritime Commission, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).[22]

The defendants' assert that the Commission's order was not supported by substantial evidence in that the Commission erroneously concluded that the carriers failed to demonstrate that the labor contract rate increases would increase carrier costs to the extent forecast. In support of this position, the defendants mainly rely on evidence to the effect that actual measurement of the cost increases exceeded that forecast. Further, records of the Interstate Commerce Commission show that after the contested rates were withdrawn a new and higher rate structure across the board was lawfully placed in effect. Neither contention, individually and collectively considered warrants the relief sought.

It is the law that at any hearing involving a change in a rate the burden of proof shall be upon the carrier to show that the proposed changed rate is just and reasonable. 49 U.S.C. § 316. The records before the Interstate Commerce Commission, upon review reflect that the Commission's findings and conclusions are supported by substantial ev-

---

20. But see American Home Products Corp. v. A & B Transfer, Inc., supra, where summary judgment for the plaintiffs was denied because of the pendency of this contention.

21. Section 16(2) states that the findings and order of the Commission are merely "prima facie evidence of the facts therein stated". Section 16(2) allows any person for whose benefit the Commission's order for the payment of money was made, to initiate an action in the federal courts if the carrier does not comply with the mandate.

22. The Commission may order a tariff cancelled solely on the grounds that the carriers have failed to meet their burden of proof. Middlewest Motor Freight Bureau v. United States, 433 F.2d 212 (8th Cir. 1970), cert. den. 402 U.S. 999, 91 S.Ct. 2169, 29 L.Ed.2d 165 (1971). The Court finds no distinction between such an order and an affirmative finding of unreasonableness, as it relates to this aspect.

idence. First, it is apparent that the evidence tendered before the Commission to substantiate the increased costs and the effect such would have on profit margins was insufficient to meet the statutory burden required of the carriers. The carriers' witness did not establish sufficiently the effect of the proposed increase in costs. The fact that the carriers were able at a later date to substantiate their position is irrelevant to the instant decision.

 Additionally, the Court finds substantial support in the administrative record for the Commission's finding that the carriers' claimed need for additional revenues was not substantiated.[23] There was insufficient evidence presented to justify as a return on investment the increasing of rates because of an increase in costs, and the carriers "failed to present a sufficient showing with regard to the effect of the wage increases upon total expenses and unit costs of the carriers".[24] Accordingly, the Court finds substantial evidence in the record supporting the Commission's finding that the carriers failed to meet the required burden of showing the increases to be just and reasonable.[25]

## THE STATUTORY CAUSE OF ACTION [26]

 The parties have stipulated, concerning questions of law involved in this action, as follows:

Whether plaintiffs have a cause of action under Title 49 U.S.C. Sec. 16(2) for enforcement of the Commission's order (Defendants object to consideration of this issue on the ground this cause of action was not pleaded). If such a cause of action exists and the Court considers it then:

(a) Is the order of the Commission valid and lawful? [27]

(b) Has the one year statute of limitations imposed by Sec. 16(3) (f) of Title 49 extinguished any cause of action which might exist under Sec. 16(2) of Title 49? [28]

23. Particular emphasis should be given to the inclusion in the amount of revenue claimed to be needed by the carriers, a figure for growth equity capital.

24. 335 I.C.C. at 151.

25. Because of this holding it is unnecessary to belabor the point on whether the carriers agreed, as a condition to the extension of time, that they would refund to the shippers the incremental receipts to the extent that the increases were not approved by the Commission; and that, since the Commission found the total increase unwarranted the carriers were obligated to immediately pay the refund. Aluminum Company of America v. Burlington Truck Lines, Inc., 342 F.Supp. 166 (N.D.Ill.1972).

26. Where the plaintiff seeks the enjoining or setting aside of a Commission's order, which order was not for the payment of money, a three-judge court is the appropriate convening court. 49 U.S.C. § 17(9); 28 U.S.C. §§ 2321, 2325. For this reason, a three-judge court was empaneled in Colorado. It cannot now be asserted that the three-judge court did not have jurisdiction, in that their decision was affirmed by the Supreme Court. Nor does the Court find that this decision precludes the applicability of 49 U.S.C. § 16 (2) to suits seeking the *enforcement* of the questioned order. See, Aluminum Company of America v. Admiral Merchants Motor Freight, Inc., and Land O'Lakes v. United Buckingham Freight Lines, Inc., supra, fn. 14. Accordingly, a single judge is appropriate for enforcement of the order with the employment of the normal federal mode of judicial review of that order. Administrative Procedure Act, 5 U.S.C. § 701 et seq.

27. The Court has previously answered this inquiry in its determination that (1) the refund portion of the order is valid because of res judicata and stare decisis and (2) the determination by the Commission that the carriers failed to meet their burden, even if it could be appropriately attacked here, was supported by substantial evidence.

28. The other stipulations as to questions of law need not be fully discussed in light of the Court's finding. It is suf-

Section 205(g) of the Interstate Commerce Act, 49 U.S.C. § 305(g) states that final orders made in relation to motor carriers are subject to the same right of judicial relief as provided for carriers by rail. Section 16(2), Title 49 U.S.C. provides:

> If a carrier does not comply with an order for the payment of money . . . any person for whose benefit such order was made, may file in the district court of the United States . . . a complaint setting forth briefly the causes for which he claims damages, and the order of the Commission in the premises. Such suit in the District Court of the United States shall proceed in all respects like other civil suits for damages . . . .

For the reasons enunciated in Aluminum Company of America v. Admiral-Merchants Motor Freight, Inc., 337 F.Supp. 674 (N.D.Ill.1972) and Aluminum Company of America v. Burlington Truck Lines, 342 F.Supp. 166 (N.D.Ill.1972), the Court finds that Section 16(2) does provide a statutory cause of action to the plaintiff under the facts presented.[29]

The Court finds that the order of the Commission on June 5, 1969, to the effect that a refund of money was required because the proposed increases were not shown to be just and reason-

---

ficient to state that this action is not one for statutory overcharge or reparations. In Middlewest Motor Freight Bureau v. United States, 433 F.2d 212, 232 (8th Cir. 1970), cert. den. 402 U.S. 999, 91 S.Ct. 2169, 29 L.Ed.2d 165 (1971) the Court noted:

> . . . overcharges are charges made by carriers in excess of the published tariffs . . . . Reparation is a remedy for damages to the extent that the filed rates exceed a just and reasonable rate. Since primary jurisdiction to determine a just and reasonable rate rests with the Interstate Commerce Commission, any proceeding involving reparations, whether administrative or judicial, requires a finding of that Commission as to what a specific just and reasonable rate is.

As in Middlewest, the Court concludes that the plaintiff should not be limited to a reparation action requiring referral.
See, Land O'Lakes, Inc., v. United-Buckingham Freight Lines, Inc., 351 F.Supp. 102 (D.Minn.1972).

29. The defendants' contention that the plaintiffs should not be able to proceed under § 16(2) because it was not specifically pleaded, is found to be without merit. The complaint specifically sets out those portions of the Commission's order on which plaintiffs predicate relief, and further states, "This action arises under the laws of the United States, to wit: Title 49 of the United States Code, Sections 304a, 316, 317 and 318, and is commenced to enforce certain orders of the Interstate Commerce Commission."

This statement is sufficient under federal notice pleadings, Rule 8, Federal Rules of Civil Procedure. The complaint specifically sets forth that it is for the enforcement of a specific order of the Interstate Commerce Commission. It is not necessary to aver the specific statutory section, especially where the defendants are fully apprised of the nature of the action. It has not been alleged that proceeding under § 16(2) has in any way surprised the defendants or hampered their defense. In fact the files and transcript reflect the contrary. See, Rule 15(b), F.R.Civ.P. Accordingly, the Court finds the objection to consideration of this action as arising under § 16(2) because such section was not specifically set out in the pleadings is without merit. Nagler v. Admiral Corporation, 248 F.2d 319 (2nd Cir. 1957) ; Siegelman v. Cunard White Star Ltd., 221 F.2d 189 (2nd Cir. 1955) ; Great Atlantic and Pacific Tea Co. v. Amalgamated Meat Cutters, 410 F.2d 650 (8th Cir. 1969) ; 5 Wright and Miller, Federal Practice and Procedure, § 1215 et seq. (1969 ed.) ; cf. Land O'Lakes, Inc. v. United Buckingham Freight Lines, Inc., supra.

A more difficult problem is whether the plaintiffs are foreclosed from seeking relief under the theory of restitution. However since the defendants were definitely placed on notice as to the crux of the plaintiffs' claim, the fact that the legal theory was not pleaded does not foreclose the granting of relief on this basis under the authority cited above.

able, was an order for the payment of money to the extent that it ordered a refund of the monetary increases charged on shipments moving after May 20, 1968. Increased Rates and Charges, From, To and Between Middlewest Territory, 335 I.C.C. 142 (No. 34971, June 5, 1969); 49 U.S.C. § 16(2); Middlewest Motor Freight Bureau v. United States, 433 F.2d 212 (8th Cir. 1970), cert. den. 402 U.S. 999, 91 S.Ct. 2169, 29 L.Ed.2d 165 (1971). However, before the plaintiffs would be entitled to relief, it must appear that the complaint was brought within the limitation period.[30]

## STATUTE OF LIMITATIONS

■ Section 16(3)(f), Title 49 United States Code states:

A complaint for the enforcement of an order of the commission for the payment of money shall be filed in the district court or the State court within one year from the date of the order, and not thereafter.

The complaint in this action was filed on November 12, 1970. The final order of the Commission was issued on October 27, 1969.[31] However, these dates ignore the proceedings before the three-judge court. Specifically, on June 19, 1970, seven months and twenty-three days after the Commission's order became final, enforcement of the order was restrained. It was not until February 4, 1971, the date judgment was entered in the *Admiral-Merchants* case, that this injunction was vacated. The undersigned Court agrees with Judge Will's decision in Bela Seating Co. v. Advance Transportation Co., 344 F. Supp. 854 (N.D.Ill.1972), to the extent that during the time the enforcement of the order was enjoined in Colorado there was not an effective order upon which the statute of limitations could run. Therefore, since the statute of limitations was tolled at least from June 19, 1970, until February 4, 1971, it conclusively appears that the complaint in this action was filed within the one year limitation period.

Accordingly, for the reasons stated above, the Court finds the issues in favor of the plaintiff and judgment shall issue forthwith to the extent of proven damages.

## DAMAGES

■ The plaintiffs are entitled to refunds in the amount of the unauthorized increase in freight charges paid to the defendants during the period from May 20, 1968, to August 31, 1969.

The Court finds the evidence fully supports the following damage awards: Proctor and Gamble Distributing Co. is

30. Notwithstanding the determination that the plaintiffs do have a cause of action under § 16(2), the Court finds that the plaintiffs could succeed under the facts on the theory of restitution. Because of their acceptance of the extension of time conditioned upon the payment of refunds if the Commission determined the increase was not warranted, the carriers owed the refunds upon the final order of the Commission after judicial review found such order was lawful.

This position was rejected by Judge Will in Aluminum Company of America v. Admiral Merchants Motor Freight, Inc., 337 F.Supp. 674 (N.D.Ill.1972). However, a reading of Middlewest Motor Freight Bureau v. United States, 433 F. 2d 212 (8th Cir. 1970), cert. den. 402

U.S. 999, 91 S.Ct. 2169, 29 L.Ed.2d 215 (1971) as well as 28 U.S.C. § 1336(a) convinces that this Court has jurisdiction to grant restitution to the plaintiffs, and such recovery is appropriate under the facts of this case.

31. Although the order complained of was issued June 5, 1969, it did not become final until the petitions for reconsideration were decided. Since the second of these petitions was determined on the merits, it was not until this order was entered, October 27, 1969, that the June 5, 1969, order became final. Bela Seating Co. v. Advance Transportation Co., 344 F.Supp. 854 (N.D.Ill.1972); Land O'Lakes, Inc. v. United-Buckingham Freight Lines, Inc., supra.

entitled to $2544.07 from defendant Ideal Truck Lines, Inc., $891.39 from defendant Darling Transfer, Inc., and $565.98 from defendant Solid Service System; Proctor and Gamble Manufacturing Co. is entitled to $30.18 from Ideal and $175.59 from Solid Service.[32] Accordingly, judgment is hereby rendered in favor of the particular plaintiff and in the above amounts against the specified defendants, with interest at the rate of six per cent per annum from August 12, 1970, the date the plaintiffs made their demand.[33]

## ATTORNEY FEES

 Section 16(2), Title 49 United States Code, states:

> If the plaintiff shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit.

Since no evidence was adduced as to the actual time and money expended by the plaintiff, although the case was deemed fully submitted, and no request for a hearing on the amount of a reasonable attorney fee was made, the Court limits itself to the record before it. The pleadings, files and trial convinces the Court that $2500 is a reasonable attorney fee for the attorneys' services performed, including the legal research and investigation necessarily involved in the preparation for trial and the trial. Therefore, the Court further awards the sum of $2500 as reasonable attorneys' fees in this action, to be taxed along with other costs against the three defendants on an equal basis.

It is so ordered.

32. As to the defendant's contention that their maximum exposure is limited to the amount of freight payments actually retained, the Court adopts its ruling made at trial that the shipper is entitled to look to the carrier collecting the bill for refund, and any division of this money by the carrier because of joint line movements, does not affect this liability. This ruling has no impact on the ability of the carrier to proceed against the interline carriers either through a third party action or otherwise.

33. Although in Aluminum Company of America v. Burlington Truck Lines, Inc., 342 F.Supp. 166 (N.D.Ill.1972) interest was awarded from the date of the first effective order of the Commission, the Court finds that because of the wording of the August 29, 1969, order ("make refunds to shippers presenting their claims to the carriers"), interest should not run until demand has been made. The Court concurs in the finding by Judge Will in the *Aluminum* decision as to the congressional policy encouraging prompt payment of moneys ordered by the Commission thereby authorizing the calculation of interest earlier than the date of the entry of judgment.